Ron Arron THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–10–00069–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 18, 2011.

Rehearing and Rehearing En Banc
Overruled Oct. 28, 2011.

Peyton Peebles III, Houston, for appellant.

Donald W. Rogers, Jr., Houston, for state.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## SUBSTITUTE OPINION
## ON REHEARING

CHARLES W. SEYMORE, Justice.

We issued our original opinion in this case on May 17, 2011. Thereafter, appellant, Ron Arron Thomas, filed a motion for rehearing and a motion for en banc reconsideration. We overrule appellant's motion for rehearing, withdraw our previous opinion, vacate our previous judgment, and issue this substitute opinion and a new judgment. Appellant's motion for en banc reconsideration is denied as moot.

Appellant was convicted of reckless cruelty to an animal and sentenced to one year in jail, probated. In two issues, appellant contends the evidence is factually insufficient to support the verdict and the trial court erred by denying his motion for new trial. We affirm.

### I. BACKGROUND

On May 28, 2009, the Houston Society for Prevention of Cruelty to Animals ("SPCA") received information that a dog was strangling in appellant's backyard. SPCA investigator Trischa Price and Houston Police Department Officer Christine Kendrick arrived at appellant's house. After determining appellant was not home, they were allowed entry into a neighbor's backyard. From that position, Officer Kendrick and Price viewed into appellant's backyard and observed a dog, later identified as dog A07731362, tangled in its leash and in distress. Acting under the "emergency doctrine," Officer Kendrick and Price entered appellant's backyard and freed dog A07731362.

While in appellant's backyard, Officer Kendrick and Price observed several other dogs that appeared to be malnourished, on illegally short leashes, suffering hair loss, living in a poor environment, and lacking food or drinkable water. Officer Kendrick left and obtained a seizure warrant directing officers to seize all dogs in appellant's backyard. When Officer Kendrick returned, she affixed the warrant to the front door of appellant's house. Officers and SPCA investigators then proceeded to seize the dogs. SPCA investigators videotaped and took several photographs of the scene. During the seizure, two dogs escaped through a hole in appellant's fence. Officers located and seized one of the escaped dogs, but the other dog evaded seizure. The next day, officers returned to appellant's house and seized dog A07733331—apparently the same dog that had evaded seizure the previous day.

The seized dogs were transported to SPCA facilities and examined by veterinarian Dr. Roberta Westbrook. On June 3, 2009, the trial court conducted a civil hearing to determine whether the dogs had been cruelly treated. Appellant did not attend the hearing. The court concluded the dogs had been cruelly treated and awarded SPCA ownership of the dogs.

In three separate informations, the State charged appellant with reckless cruelty to animals by confining dog A07731362 in a cruel manner and by failing unreasonably to provide proper nutrition or veterinary care to dog A07733331 and dog A07731353. *See* Tex. Penal Code Ann. § 42.092(b)(3), (5) (West Supp.2009). Appellant pleaded "not guilty" to each charge. The jury acquitted appellant of the charges related to dog A07731362 and dog A07731353 but convicted him of the charges related to dog A07733331. Appel-lant filed a motion for new trial in which he contended the evidence is insufficient to support the verdict and defense counsel provided ineffective assistance. The trial court denied the motion following an evidentiary hearing.

## II. FACTUAL SUFFICIENCY

In his first issue, appellant contends the evidence is factually insufficient to support his conviction of cruelty to dog A07733331.

### A. Applicable Law and Standard of Review

 A person commits cruelty to a non-livestock animal if he, among other acts and omissions, recklessly "fails unreasonably to provide necessary food, water, care, or shelter for an animal in [his] custody." *Id.* § 42.092(b)(3).[1] *Necessary* food, water, care, or shelter includes that required to maintain the animal in a state of good health. *Id.* § 42.092(a)(7).

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(c) (West 2003). Recklessness is generally proved by circumstantial evidence. *See Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App. [Panel Op.] 1978).

While this appeal was pending, five judges on the Texas Court of Criminal

---

1. There are several exceptions to the application of the cruelty to nonlivestock animals, *see* Tex. Penal Code Ann. § 42.092(f), none of which are applicable in this case.

Appeals held that only one standard should be employed to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex.Crim.App.2010) (plurality op.); *id.* at 926 (Cochran, J., concurring). Accordingly, we review appellant's challenge to factual sufficiency of the evidence under the legal-sufficiency standard. *See Pomier v. State*, 326 S.W.3d 373, 378 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (applying a single standard of review required by *Brooks* ); *see also Caddell v. State*, 123 S.W.3d 722, 726–27 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (explaining that this court is bound to follow its own precedent).

█ When reviewing sufficiency of evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 899 (plurality op.). We may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.* at 899, 901; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986) (expressing jury may choose to believe or disbelieve any portion of testimony). We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim.App.2007).

In his brief, appellant expressly concedes the evidence is sufficient to support his conviction under the legal-sufficiency standard. Therefore, in light of the Court of Criminal Appeals's determination that challenges to factual sufficiency must be reviewed under the legal-sufficiency standard, appellant has conceded the evidence is factually sufficient. Nevertheless, in the interest of justice, we will determine whether the evidence is factually sufficient to support the verdict under the legal-sufficiency standard.

## B. Analysis

█ Appellant first argues the evidence is insufficient to support the jury's finding that he recklessly failed to provide proper nutrition to dog A07733331. Dr. Westbrook testified that none of the dogs seized from appellant appeared to have received proper nutrition. She explained that a dog's nutrition level may be examined by determining its body condition scoring ("BCS") score. Under BCS, "there is usually a scale from 1 to 9 . . . . [1] is the most emaciated of animals, 9 is usually an obese animal. And we like animals to be at a 5, that is ideal." Dr. Westbrook determined dog A07733331 had a BCS score of two, meaning it was "absolutely" not in good condition.[2] The videotape and photographs, when viewed in conjunction with Dr. Westbrook's findings, also support the jury's finding that appellant did not provide proper nutrition. There was no food in appellant's backyard at the time of the seizure except a few dog biscuits. Further, water bowls in the backyard contained filthy and undrinkable water.

We recognize that appellant testified he regularly provided food and water to his dogs and had fed them on the morning of May 28, 2009. However, the physical condition of dog A07733331 contradicts this testimony, and we must defer to the jury's

2. Appellant notes Dr. Westbrook agreed that another veterinarian might have given dog A07733331 a BCS score of three or possibly four. This testimony did not necessarily affect the probative value of Dr. Westbrook's BCS score, particularly because she testified she is especially adept at scoring dogs on the BCS scale.

resolution of conflicting evidence. *See Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. A reasonable jury could conclude that appellant, as the admitted caretaker of the dogs, was aware of, but consciously disregarded, a substantial and unjustifiable risk that he failed to provide proper nutrition to dog A07733331, and that such risk constituted a gross deviation from the standard of care which an ordinary person would have exercised under all the circumstances as viewed from appellant's standpoint. Therefore, the evidence is sufficient under the legal-sufficiency standard to support a finding beyond a reasonable doubt that appellant recklessly failed to provide proper nutrition to dog A07733331.

■ Appellant also argues that the evidence is insufficient to support the jury's finding that he recklessly failed to provide proper veterinary care to dog A07733331. Dr. Westbrook testified that none of the dogs had received proper veterinary care. She explained that dog A07733331 had a severe flea infestation, heartworms, and intestinal parasites. Dr. Westbrook attributed bloody discharge found in dog A07733331's transport crate to the intestinal parasites.[3] Appellant testified he provided flea, heartworm, and parasite medication to his dogs and never observed any of the dogs vomit, bleed, or have diarrhea. Nevertheless, we must defer to the jury's decision to disbelieve this testimony relative to dog A07733331. *Id.* Additionally, appellant admitted that the dogs had never received rabies vaccinations. In light of the dog's deplorable living conditions, including filthy, stagnant water with visible mosquito larvae, and the emaciated and

parasite-infested condition of several of the dogs, including dog A07733331, the evidence is sufficient under the legal-sufficiency standard to support a finding beyond a reasonable doubt that appellant recklessly failed to provide veterinary care to dog A07733331.

■ Finally, appellant contends the evidence is insufficient to support his conviction for reckless cruelty to dog A07733331 because the jury acquitted him of the same charges relative to dog A07731353, which was in worse physical condition than dog A07733331. However, assuming these verdicts were inconsistent, inconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency. *See Jackson v. State,* 3 S.W.3d 58, 61 (Tex.App.-Dallas 1999, no pet.). Inconsistent verdicts do not necessarily imply that the jury convicted the defendant on insufficient evidence, but may simply stem from the jury's desire to be lenient or to execute its own brand of executive clemency. *Moranza v. State,* 913 S.W.2d 718, 724 (Tex.App.-Waco 1995, pet. ref'd). Accordingly, we will not consider this contention. We overrule appellant's first issue.

### III. MOTION FOR NEW TRIAL

In his second issue, appellant argues the trial court erred by denying his motion for new trial based on jury misconduct and ineffective assistance of counsel.[4]

### A. Jury Misconduct

■ First, appellant contends he was entitled to a new trial because the jury

---

**3.** Appellant notes that Dr. Westbrook testified that fleas and intestinal parasites were common in untreated outdoor dogs. Such testimony does not necessarily negate Dr. Westbrook's professional opinion that dog A07733331 had not received proper veterinary care.

**4.** Appellant also contends in this section that he was entitled to a new trial because the evidence is insufficient to support the verdict. For the reasons stated above, the evidence is sufficient under the legal-sufficiency standard.

decided its verdict by lot. "The defendant must be granted a new trial ... when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion." Tex.R.App. P. 21.3(c). To demonstrate jury misconduct, a defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. *Cyr v. State*, 308 S.W.3d 19, 31 (Tex.App.-San Antonio 2009, no pet.). A trial court's denial of a defendant's motion for new trial due to jury misconduct is reviewed for abuse of discretion. *See Ford v. State*, 129 S.W.3d 541, 547 (Tex.App.-Dallas 2003, pet. ref'd).

Appellant argues the record clearly indicates that the jury improperly arrived at its verdict by compromise because he was convicted of the charges regarding dog A07733331 but acquitted of identical charges regarding dog A07731353 despite the fact that the physical condition of dog A07731353 was worse than that of dog A07733331. Appellant notes that both his trial counsel and the prosecutor testified they believed the jury arrived at these verdicts through compromise. According to appellant, these circumstances were necessarily sufficient to prove a compromise verdict because he was unable to present testimony from the actual jurors concerning what occurred during deliberations. *See* Tex.R. Evid. 606(b) (providing that, generally, "a juror may not testify as to any matter or statement occurring during the jury's deliberations"); *see also Hicks v. State*, 15 S.W.3d 626, 630 (Tex.App.-Houston [14th Dist.] 2000, no pet.) ("By generally prohibiting jurors from testifying as to matters and statements occurring during deliberations, rule 606(b) unquestionably makes proving jury misconduct in criminal trials more difficult than it was under prior rules."). We disagree. As noted above, seemingly inconsistent verdicts may stem from the jury's desire to be lenient, which would favor appellant. *See Moranza*, 913 S.W.2d at 724. Accordingly, notwithstanding defense counsel's and the prosecutor's speculations that a compromise verdict occurred, the trial court did not err by denying a new trial on this ground.

## B. Assistance of Counsel

■■■ Next, appellant contends his counsel was ineffective in several respects. In reviewing ineffective-assistance claims, we apply a two-pronged test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim. App.2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The defendant must prove by a preponderance of the evidence that (1) counsel's representation was deficient because it fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for counsel's deficiency, the result would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Smith v. State*, 286 S.W.3d 333, 340 (Tex.Crim.App. 2009) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). We consider the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). We begin with the strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Stults v. State*, 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption, the "allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."

*Thompson,* 9 S.W.3d at 814 (quoting *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)).

### 1. Failure to Quash the Information

Appellant first argues that counsel provided ineffective representation by failing to file a motion to quash the information. The pertinent information contained the following allegation: "[Appellant] did then and there unlawfully, recklessly fail unreasonably to provide necessary food, water, care and shelter for an animal in [his] custody to-wit: a DOG IDENTIFIED BY A07733331 by FAILING TO PROVIDE PROPER NUTRITION OR VETERINARY CARE[.]" Appellant contends the State did not allege the acts constituting his recklessness with the required specificity. *See* Tex.Code Crim. Proc. Ann. art. 21.15 (West 2009) (mandating that "recklessness" be alleged with "reasonable certainty").

▆▆ Assuming without deciding that recklessness was not sufficiently alleged in the information, we do not agree counsel acted deficiently by failing to file a motion to quash. Counsel testified he discussed the allegations with the prosecutor on "[a]t least two occasions," reviewed the SPCA and veterinary reports, and believed he "underst[ood] what the charge meant when it said lack of nutrition or veterinary care." Thus, appellant did not prove that counsel lacked an opportunity to prepare a defense. Additionally, no evidence or argument was presented indicating the State would have been prevented from amending the pleading had a motion to suppress been filed. *See* Tex.Code Crim. Proc. Ann. art. 28.10 (West 2006) (allowing amendment of information); *see also Keller v. State,* 125 S.W.3d 600, 607–08 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd) ("Appellant has not established that he would have prevailed on a motion to dismiss, given that the indictment contained all the elements of the offense . . . and could have been amended to correct the pleading error."). Appellant argues the State's case would have been narrowed and more difficult had the State been forced to allege recklessness with more specificity. This contention is not necessarily correct because in amending the information, the State likely would have merely added the facts supporting dog A07733331's severe condition for which appellant was ultimately convicted. Accordingly, appellant has not established that counsel was deficient by failing to file a motion to quash.

### 2. Failure to Identify Dog Prior to Trial

Appellant argues counsel provided ineffective representation because he did not know which dog was dog A07733331 prior to trial. Appellant contends counsel's testimony during the motion for new trial hearing conclusively established that he was uncertain whether dog A07733331 was the dog seized on May 29 rather than one of the dogs seized on May 28. We disagree. Counsel testified that he was "pretty sure" dog A07733331 was the dog seized on May 29. Further, counsel was not asked and did not state whether he was familiar with dog A07733331 *prior to trial;* counsel understandably may not have remembered the facts pertaining to each dog because the hearing on appellant's motion for new trial occurred two-and-a-half months after trial. Relative to his pre-trial preparation, counsel testified that he understood the facts, reviewed the SPCA and veterinary reports and photographs, and discussed dog A07733331 with appellant during a meeting at the prosecutor's office. The prosecutor also testified that she discussed dog A07733331 with appellant and defense counsel during the meeting. We recognize that appellant testified his counsel was unfamiliar with the facts of the case on the day before trial.

However, this testimony merely raised a factual dispute that the trial court implicitly resolved against appellant. *See Shanklin v. State*, 190 S.W.3d 154, 161 (Tex.App.-Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim.App.2007). Accordingly, appellant has not established that counsel failed to identify dog A07733331 before trial.

### 3. Failure to File Motion to Suppress

Appellant next argues that counsel provided deficient representation by failing to file a motion to suppress all evidence related to dog A07733331's seizure, including veterinary records. To establish counsel was ineffective for failing to file a motion to suppress, appellant first must show that such motion would have been granted. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim.App.1998).

First, appellant argues officers seized his dogs pursuant to a search warrant for "mere evidence" issued by a justice of the peace under article 18.02(10) of the Texas Code of Criminal Procedure. Tex.Code Crim. Proc. Ann. art. 18.02(10) (West 2005). This issue presents a question of statutory construction.

Under the canons of statutory construction, we must construe a statute according to its plain language. *Thompson v. State*, 236 S.W.3d 787, 792 (Tex. Crim.App.2007). In determining the plain meaning of the language of a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (West 2005); *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex.Crim.App.1996). If the language of the statute is unambiguous, we may not resort to extratextual factors in interpreting the statute. *Thompson*, 236 S.W.3d at 792.

Article 18.02(10) of the Code of Criminal Procedure authorizes search warrants for "mere evidence" of a crime. Tex.Code Crim. Proc. Ann. art. 18.02(10); *see also Porath v. State*, 148 S.W.3d 402, 409 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (referring to article 18.02(10) as the "mere evidence" provision). A search warrant for mere evidence may be issued only by certain judicial officials, not including justices of the peace. Tex.Code Crim. Proc. Ann. art. 18.01(c) (West 2009).

A subsequent search warrant may be issued pursuant to Subdivision (10) of Article 18.02 of this code to search the same person, place, or thing subjected to a prior search under Subdivision (10) of Article 18.02 of this code only if the subsequent search warrant is issued by a judge of a district court, a court of appeals, the court of criminal appeals, or the supreme court.

*Id.* art. 18.01(d) (West Supp.2009).

Relying on these provisions, appellant contends dog A07733331 was illegally seized because the police were required to obtain a new search warrant from a court other than a justice court before searching appellant's house on May 29. At the hearing on appellant's motion for new trial, defense counsel admitted that in light of 18.01(d), he would file a motion to suppress if he could "do this all over again.".

We conclude article 18.01(d) is not applicable in this situation. On May 28, 2009, the justice of the peace issued a "Warrant for Seizure of Animal" whereby officers were commanded to seize dogs located at appellant's property. The warrant was clearly issued pursuant to section 821.022 of the Health & Safety Code, which authorizes justices of the peace to issue warrants for the seizure of cruelly treated animals. Tex. Health & Safety Code Ann. § 821.022(a) (West 2010). Therefore, the requirement for a subse-

quent search warrant under article 18.01(d) did not apply.[5]

 Next, appellant argues that the warrant did not provide the officers authority to return to his house and seize dog A07733331 on May 29 because the officers *returned* the warrant to the justice of the peace on May 28. Assuming without deciding that officers may no longer execute an animal-seizure warrant once it has been returned to the issuing magistrate, we conclude appellant has not proven by a preponderance of the evidence that the trial court would have granted suppression based on this issue. *See* Jackson, 973 S.W.2d at 957; *Hollis v. State*, 219 S.W.3d 446, 456 (Tex.App.-Austin 2007, no pet.).

The record does not affirmatively demonstrate that the warrant was actually returned on May 28. Admittedly, the warrant contains a return section on which type-written language was added indicating that the warrant was executed, and the dogs removed, on May 28, 2009. However, a signature line in the return section is blank, no court file stamp appears on the return, and the executing officer did not testify that he returned the warrant on May 28. The type-written language and lack of a signature supports an inference the return section was completed prior to execution of the warrant in anticipation that all of the dogs would be seized on May 28. The officers could have initially executed the warrant on May 28, continued execution of the warrant on May 29 by returning and seizing dog A07733331, then returned the warrant to the justice of the peace. *See State v. Powell*, 306 S.W.3d 761, 770 n. 16 (Tex.Crim.App.2010) (con-cluding officers' search which uncovered contraband was a continuation of the lawful search they conducted the prior day pursuant to a search warrant). Accordingly, we hold appellant has not established that trial counsel was deficient for failing to seek suppression based on the warrant being returned on May 28.

### 4. Failure to Argue there were Dog Biscuits in Backyard

 Appellant next argues counsel was ineffective for failing to argue that the video depicts dog biscuits in appellants' backyard. We agree with the trial court's statement that counsel was not ineffective for failing to make this argument because "[t]he jury can view the video and see things for themselves without attorneys pointing out every piece of evidence." Furthermore, even assuming counsel's representation was deficient because of his failure to mention the biscuits, we cannot conclude that, but for this deficiency, there is a reasonable probability the result would have been different. It is highly unlikely the jury would have believed dog A07733331's emaciated and parasite-infested condition stemmed from something other than appellant's recklessness because there were a few dog biscuits in the backyard. Appellant has not established that counsel was deficient by failing to argue appellant provided dog biscuits.

### 5. Failure to Argue Videotape Depicted Dog as Energetic

Appellant next argues that counsel was ineffective for failing to argue that the videotape depicts the dog as energetic.

---

5. In a civil case, this court previously analogized the situation in which an animal is seized without a warrant to the situation in which evidence is seized without a search warrant issued under article 18.02(10). *See Pine v. State*, 889 S.W.2d 625, 631 (Tex.App.-Houston [14th Dist.] 1994, writ dism'd w.o.j.). However, *Pine* is not applicable in the present case. We make no determination regarding whether any portion of chapter 18 of the Code of Criminal Procedure is applicable to an animal-seizure warrant issued under section 821.022.

Again, we agree with the trial court's statement that "[t]he jury can view the video and see things for themselves without attorneys pointing out every piece of evidence." Furthermore, any exculpatory inference raised by the dog's energy level was weakened by Dr. Westbrook's testimony that "dogs can go a long time without food, and they can do fairly well. They can still be, you know, active and alert, but be in poor body condition." Appellant has not established that counsel was deficient by failing to argue dog A07733331 was energetic and active.

### 6. Failure to Present Evidence Regarding the Dog's Menstruation

Appellant argues counsel was ineffective because he should have elicited evidence that the bloody discharge from dog A07733331 could have been due to the dog's menstrual cycle. Before trial, the prosecutor discussed with appellant and defense counsel the possibility the blood may have been caused by the dog's menstrual cycle. It is undisputed that dog A07733331 had not been spayed at the time it was seized. Dr. Westbrook testified that "a lot" of bloody discharge came from dog A07733331's "gastrointestinal tract, from the rectum," meaning the dog was "suffering from a severe condition" possibly because it was infected with "two types of intestinal parasites that can both lead to bloody diarrhea." Defense counsel did not question Dr. Westbrook concerning whether the bloody discharge could have been caused by the dog's menstrual cycle. According to appellant, counsel's failure to raise an issue regarding menstruation guaranteed the jury would find that the bloody discharge resulted from appellant's failure to care for dog A07733331. Appellant argues this finding likely caused the jury to convict him relative to dog A07733331 because the presence of bloody discharge was the primary factor differen-

tiating dog A07733331's condition from dog A07731353's condition.

We disagree that these circumstances established ineffective assistance of counsel. There was no evidence Dr. Westbrook would have agreed that the discharge could have been caused by the dog's menstrual cycle; the fact that the prosecutor suggested the possibility did not prove a veterinary expert would have agreed. Additionally, there was some evidence that could have caused the jury to consider whether dog A07733331's discharge was caused by menstruation. Appellant's friend, Angela Nelson, testified her dog (which was in appellant's custody and in poor physical health at the time of the seizures) had occasional bloody discharge which she believed was due to the dog's menstrual cycle. Accordingly, appellant has not established that counsel was deficient by failing to question Dr. Westbrook on the cause of dog A07733331's discharge.

### 7. Failure to Present Evidence Regarding the Dog's Behavior Change

In his final ineffective-assistance contention, appellant argues counsel was ineffective because he should have presented evidence regarding a change in dog A07733331's behavior. At the hearing on appellant's motion for new trial, Nelson testified the dog was uncharacteristically lethargic on the evening of March 28, 2010. In fact, Nelson thought the dog might have been tranquilized. Nevertheless, appellant does not explain why this evidence would have aided his defense. Thus, he has not established that counsel was deficient by failing to introduce this evidence.

### C. Interests of Justice

Lastly, appellant contends "[t]he interests of justice demand a new trial in this case." He argues that "the jury's inexpli-

cable decision to convict [him] of cruelly [treating] Dog A07733331 while acquitting him of the same allegation concerning Dog A07731353 despite substantially more compelling evidence in that case, [in conjunction with defense counsel's shortcomings,] compels a new trial in the interests of justice." For the foregoing reasons, we disagree. We overrule appellant's second issue.

We affirm the trial court's judgment.