

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00490-CR

Tezelle **MOORE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 432nd District Court, Tarrant County, Texas
Trial Court No. 1276457R
The Honorable Ruben Gonzalez, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 19, 2013

AFFIRMED

A jury found appellant, Tezelle Moore, guilty of aggravated assault and assessed punishment at forty years' confinement.  We affirm.

### SUFFICIENCY OF THE EVIDENCE

Appellant was charged on two counts: aggravated assault with a deadly weapon and felon in possession of a firearm.  The jury also was given a deadly weapon issue on whether appellant used or exhibited a deadly weapon during the commission of the offense of possession of a

firearm by a felon as charged in count two. The jury found appellant guilty on count one, not guilty on count two, and not true to the deadly weapon issue.

On appeal, appellant contends the law of parties portion of the charge did not apply to the use or exhibition of a deadly weapon. Appellant asserts that because the jury found him not guilty of felon in possession of a firearm and found he did not use or exhibit a deadly weapon, the jury specifically found he did not have a gun during the offense. Therefore, appellant concludes, the evidence is legally insufficient to support his aggravated assault conviction because such a conviction requires the use or exhibition of a deadly weapon.

Inconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency. *Dunn v. United States*, 284 U.S. 390, 393-94 (1932); *Thomas v. State*, 352 S.W.3d 95, 101 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Jackson v. State*, 3 S.W.3d 58, 61 (Tex. App.—Dallas 1999, no pet.). "Inconsistent verdicts do not necessarily imply that the jury convicted the defendant on insufficient evidence, but may simply stem from the jury's desire to be lenient or to execute its own brand of executive clemency." *Thomas*, 352 S.W.3d at 101; *see also Jackson*, 3 S.W.3d at 61. Even where an inconsistent verdict might have been the result of compromise or mistake, the verdict should not be upset by appellate speculation or inquiry into such matters. *Jackson*, 3 S.W.3d at 61-62. Consequently, we are limited to determining whether the evidence is legally sufficient to support the jury's guilty verdict on count one. *See id.* "What the factfinder did with the remainder of the charge is immaterial." *Id.*

When determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt, we use the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, we ask whether, considering all of the

evidence in the light most favorable to the verdict, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 899, 902 (citing *Jackson*, 443 U.S. at 319). "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899. This legal sufficiency standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

Appellant and his family lived across the street from the complainant, Ernest Davis, and his family. Patrick Cato lived in the same house as Ernest and has known appellant for most of his life. Earlier in the afternoon of November 8, 2010, appellant and Patrick had a confrontation about parking cars in front of the houses. Patrick said appellant told appellant's brother to "shoot at" anyone who pulled up in front of the house. Several adults and children were outside of both houses at the time, including Ernest's grandmother-in-law, Carolyn Cato, who also lived in the same house with Ernest. Carolyn witnessed the argument between appellant and Patrick, after which appellant offered to take her to the store. When they returned from the store, appellant said he wanted to talk to Ernest, but he had not yet returned home from work.

When Ernest returned from work, he walked over to appellant and Patrick who were again talking. For no apparent reason, appellant hit Ernest in his head and the two began fighting in the street. After several minutes of fighting, Ernest, who was apparently winning the fight, stopped and went into his house to get his asthma pump. Patrick, who had been walking toward his house and, therefore, had his back turned, heard appellant say "get the guns" and then gunfire. Patrick had earlier seen appellant's gun under a shirt on the hood of a Chevy Traverse. Patrick had also seen appellant with the revolver earlier in the day and knew appellant had fired the gun inside his house on another evening about a week earlier.

When the gunfire started, Patrick picked up his small son, and with his wife ran to the side of his house for cover. Patrick said he looked around the corner and saw appellant and his brother, Jeremy Miller, shooting. As they were shooting, both appellant and Jeremy stood or crouched near the Traverse. Patrick said appellant fired his gun about three times with Jeremy firing the most. Patrick said no one else from appellant's house fired a weapon. However, Patrick also heard gunfire coming from his house and he learned later that Ernest was the person firing the gun. The shooting continued for almost eight minutes. Eventually, Patrick ran into his house to find Ernest at the front of the house bleeding from a chest wound.

Carolyn also witnessed the fight between Ernest and appellant, and said appellant started the fight. After the fight ended, she heard appellant say "he keeps his piece," which she believed meant appellant was tired of "people messing over him." She also had seen appellant with a gun earlier in the day and had heard him shoot his gun inside his house. She said Ernest was walking toward his house to get his asthma pump and she was standing in the doorway when she heard gunfire. She saw appellant point his gun at her house. She heard appellant say "Don't hit the old lady standing in the door." With her and all the children safely inside her house, Ernest walked past her in the house and said "I'm hit." Carolyn told her granddaughter to take him to the hospital.

Ernest's father-in-law was inside the house when the gunfire began. He saw Ernest walk into his own room and retrieve a gun from under his bed. He never saw Ernest alive again. Ernest returned fire, and was fatally shot by appellant's brother Jeremy. Jeremy was convicted of murder in a separate trial.

Two days later, police, while executing a search warrant on appellant's house, found an empty ammunition box for a .44-caliber revolver, a live .44-caliber round, and a projectile in the floor that was consistent with a bullet fired from a .44-caliber revolver. When shown a picture of

a nine-millimeter gun, Patrick testified it was similar to the one fired by Jeremy. Patrick described appellant's gun as a revolver.

After considering all the evidence in the light most favorable to the verdict, we conclude a jury was rationally justified in finding appellant's guilt beyond a reasonable doubt on the charge of aggravated assault with a deadly weapon.

## CROSS-EXAMINATION OF STATE'S WITNESSES

Before trial, the State disclosed that appellant, appellant's brother, and various other State witnesses had "suspect profiles" listing arrests, convictions, or pending criminal cases. Before testimony began during trial, the State verbally asked for an in limine ruling from the trial court "as to any pending cases" that Patrick Cato and Carolyn Cato had. Specifically, the State asked that defense counsel not be allowed to ask Patrick or Carolyn about their pending cases because the State had not made any deal in exchange for their testimony and allowing counsel to cross-examine them would be improper under Texas Rule of Evidence 609 ("Impeachment by Evidence of Conviction of Crime"). Appellant countered that cross-examination was proper under Rule 608 ("Evidence of Character and Conduct of a Witness"). After hearing arguments, the trial court stated "it's not proper for me to rule on what's admissible at this point because I don't know what you're [defense counsel] going to present until it's actually presented and the State makes an objection. . . . But under 608 and 609, you are not going to be allowed to go into those matters on cross-examination. It's not a final conviction." On appeal, appellant asserts the trial court erred by prohibiting defense counsel from impeaching the State's witnesses concerning their bias in favor of the State due to their pending criminal cases.

The granting of a motion in limine is only a preliminary ruling, and does not preserve error in the admission of evidence; a separate trial objection must be made at the time the evidence is offered for admission. *Geuder v. State*, 115 S.W.3d 11, 14-15 (Tex. Crim. App.

2003). In this case, when the witnesses testified, appellant did not attempt to cross-examine them about their pending criminal cases or ask for a final adverse ruling on his desire to cross-examine them. Therefore, appellant's argument is not preserved for our review. *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000) (trial objection is required to preserve error); TEX. R. APP. P. 33.1(a)(1)(A).

## ADMISSION OF GUN FOR DEMONSTRATIVE PURPOSES

At trial, defense counsel argued to the jury that there was no evidence appellant shot a gun or that he ever possessed a nine-millimeter gun. Patrick testified appellant's brother fired a nine-millimeter gun and appellant fired a revolver about three times. The revolver appellant allegedly used or exhibited during the offense was never found and only nine-millimeter casings and projectiles were recovered from the scene. Patrick said he also saw appellant shoot the revolver in appellant's house earlier in the day, and he thought appellant had fired a gun inside his house about a week and a half earlier. A crime scene officer testified officers recovered from appellant's house an empty ammunition box, a live round for a .44-caliber revolver, and a fired projectile that had left a bullet strike in the floor. The State's firearm expert, Michael Ward, testified, outside the jury's presence, that State's Exhibit 153—a Smith & Wesson Model 29-3 .44-caliber revolver—would help the jury understand his testimony regarding how revolvers work, as opposed to how a semi-automatic weapon as used by appellant's brother would work. Ward also said the revolver would help the jury understand his testimony regarding shell casings from a .44-caliber revolver as opposed to shells ejected from the semi-automatic for the purpose of explaining why no .44-caliber casings were found at the scene.

After the trial court admitted Exhibit 153 for demonstrative purposes, Ward used the exhibit to testify about how a Smith & Wesson Model 29-3 .44-caliber revolver functioned, how it was fired, how bullets were loaded, and the differences between the revolver and a semi-

automatic firearm including how fired cartridge casings are ejected by a nine-millimeter gun but not by a revolver. Although Ward stated there were no .44-caliber Magnum cartridges for him to examine, the weight of the projectile found in the floorboard of appellant's house was consistent with a .44-caliber projectile.

On appeal, appellant asserts the trial court erred by admitting State's Exhibit 153 into evidence and the trial court erred by not *sua sponte* giving the jury a limiting instruction. Appellant did not request a limiting instruction. *See* TEX. R. EVID. 105a (trial court "upon request shall restrict the evidence to its proper scope and instruct the jury accordingly"). Therefore, we must conclude this complaint is waived. *Id.* ("in absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.). Accordingly, we consider only whether the trial court erred in admitting the revolver for demonstrative purposes.

We review a trial court's admission of demonstrative evidence for an abuse of discretion. *See Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981). It is within the trial court's discretion to admit into evidence a similar type weapon or instrument used in the commission of an offense if it is relevant and material to an issue in the case, is not overly inflammatory, and the original, if available, would be admissible. *Id.* "A weapon or instrumentality that is described as 'like,' 'similar to,' 'much the same,' 'pretty much the same,' 'more or less the same,' 'something like,' 'notunlike,' 'comparable,' 'resembles,' 'closely resembles,' 'close,' 'same but not the exact one,' or described by the use of comparable words or phrases as these, is admissible as an aid to the jury in interpreting and understanding the oral testimony adduced at the trial." *Id.* at 113-14.

Here, a weapon was relevant to the offense of aggravated assault because the State alleged appellant shot at Ernest using a gun that was very different from the nine-millimeter gun

used by his brother. While the actual weapon was never recovered, the State theorized appellant fired a .44-caliber revolver because witnesses identified appellant as firing a revolver and his brother firing a nine-millimeter, appellant had fired a revolver inside his house, and a projectile consistent with a .44-caliber revolver was found in the floor of his house. Ward used the gun only for the purpose of drawing distinctions between the two types of weapons and for explaining why only nine-millimeter casings were found at the scene. The exhibit gun itself had no inflammatory attributes, and was presented only as an aid to the firearm expert's testimony. Under these circumstances, we conclude the trial court did not abuse its discretion by admitting State's Exhibit 153 for demonstrative purposes.

## EXTRANEOUS BAD ACTS

In an issue related to his complaint about the admission into evidence of the demonstrative gun, appellant asserts the trial court erred by overruling his running objection to the testimony that he had fired a revolver before the offense, including inside his house, and that police recovered from his house the empty ammunition box, a live .44-caliber round, and a fired projectile consistent with a .44-caliber revolver. The only running objection made by appellant was that admission of the demonstrative gun was more prejudicial than probative and should be excluded under Rule of Evidence 403. When asked if defense counsel had any objection to the State's intention to ask about appellant's history of shooting the gun in his house and the recovery of the ammunition and projectile from his house—all for the purpose of establishing the caliber of the gun used by appellant and in support of the firearm expert's testimony—counsel stated "when those issues come up, "I'm still going to object." The trial court told counsel to make a contemporaneous objection "when those issues came up," but allowed counsel a running Rule 403 objection as to Exhibit 153. Therefore, appellant was required to raise a contemporaneous objection to the witnesses' testimony.

However, when the witnesses testified, defense counsel objected only once. When Carolyn Cato was asked whether she had heard appellant shoot a gun inside his house, appellant objected as speculative, the trial court sustained the objection, and instructed the jury to disregard. Because appellant did not raise his extraneous offense objection at trial when the testimony was offered, his complaint is waived. *See Martinez*, 22 S.W.3d at 507; TEX. R. APP. P. 33.1(a)(1)(A).

## TRIAL COURT'S RESPONSE TO JURY QUESTION

During deliberations, the jury sent a note to the court asking, "On Count One, the aggravated assault. We need clarification to know, does the defendant have to have a deadly weapon in his possession." Over appellant's objection, the trial court answered the note as follows:

> As to Count One of the aggravated assault, if you believe the Defendant acted alone, then he must be in possession of a deadly weapon to be guilty of aggravated assault. If, however, you believe he acted as a party with [his brother] Jeremy Miller, as previously defined in the Court's Charge, then he does not need to be in possession of a deadly weapon.

On appeal, appellant asserts the trial court's instruction implicitly commented on the weight of the evidence and impermissibly encouraged the jury to concentrate on specific evidence during their deliberations. Appellant contends the jury's note did not reference or ask about law of the parties; therefore, when the trial court injected law of the parties into its answer, the court impermissibly focused the jury on law of the parties, and unjustly singled out Jeremy Miller's conduct. Appellant contends that because the jury question asked only about aggravated assault, the only permissible answer should have been "yes, an individual does have to be in possession of a deadly weapon to be found guilty of aggravated assault with a deadly weapon." We do not agree that the trial court's answer should have been so narrow.

The jury is governed by the law it receives from the court. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). A trial court may not comment on the weight of the evidence in the charge. *Id.* art. 36.14; *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). Although the trial court ordinarily provides instructions to the jury before the jury retires to deliberate, the court may give further written instructions upon the jury's written request for additional guidance regarding applicable law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.16 (West 2006) (providing court may give "further charge" to jury upon jury's request after parties finish closing arguments). When the trial court responds substantively to a question the jury asks during deliberations, that communication amounts to a supplemental jury instruction, and the trial court must follow the same rules that generally govern jury instructions. *See Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993).

Because a trial court's answer to a jury's question must comply with the same rules that govern charges, the trial court, as a general rule, must limit its answer to setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury. *See* TEX. CODE CRIM. PROC. art. 36.14; *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008).

Here, the jury charge on aggravated assault included the law of parties and the application paragraph allowed conviction if the jury found that appellant "did intentionally or knowingly or recklessly, acting alone *or as a party, as that term has been previously defined, with Jeremy Miller*, threaten imminent bodily injury to Ernest Davis and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a firearm, then you will find the Defendant, Tezelle Moore, guilty of the offense of aggravated assault, as charged in Count One of the indictment." [Emphasis added.] We believe the trial court's answer to the jury

question merely restated the application paragraph contained in the jury charge; thereby treating both theories of liability in a neutral manner. Therefore, we conclude the trial court did not impermissibly answer the jury's question.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice

Do not publish