**AFFIRMED; Opinion Filed July 11, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-12-01072-CR**

_____

**JAMES CRAWFORD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 30096-422**

## OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Evans

A jury convicted James Crawford for committing each of the following crimes as a member of a criminal street gang, the Aryan Brotherhood of Texas: directing the activities of the ABT; possession of a controlled substance with intent to deliver; two aggravated kidnappings; aggravated assault with a deadly weapon; and unauthorized use of a motor vehicle. The jury acquitted appellant of aggravated assault with a deadly weapon and felon in possession of a firearm. The jury assessed punishment at confinement for life for each of the first two convictions, eighty years for the third and fourth convictions, and thirty years for the fifth and sixth convictions. Appellant complains on appeal that the acquittal on the felon in possession of a firearm conflicts with the convictions for the two aggravated kidnappings and one aggravated assault with a deadly weapon. He argues the conflict indicates the evidence is insufficient to convict him on those three counts. Second, appellant contends that his trial counsel provided

ineffective assistance. We overrule both of appellant's points of error and affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Uncontroverted testimony from the prosecution's experts established that the ABT is a Texas statewide gang with approximately 2,600 members, about 280 of whom are incarcerated. The evidence also established that complainant Jason Mask was trying to leave the ABT and that appellant and his accomplices were active in the ABT. The ABT has an organizational structure, regular local meetings ("church"), and members are required to pay dues plus ten percent ("tithe") of the proceeds of their illegal activities to the ABT. Through its members, the ABT is involved in murder, attempted murder, kidnapping, aggravated assaults, narcotics trafficking, firearms trafficking, arsons, counterfeiting, and identity theft. The ABT frequently punishes, sometimes tortures, and sometimes kills members who attempt to leave. Further, the ABT does not allow a member to depart with an ABT tattoo. Such tattoos are sometimes inked over with a tattoo gun or burned over with a tattoo gun without ink. Others are cut off with a knife or burned off with a blowtorch. ABT members use tattoos to identify themselves as members, several of which appellant and Mask had.

Mask joined the ABT while in a Texas prison. When he was released on parole to Kaufman County, Mask did not continue his relationship with the ABT until after he began a relationship with complainant Jennifer Howard. Mask and Howard became common law married, Mask informally adopted her three children from previous relationships, and eventually they had one child together. Mask resumed active membership in the ABT after he encountered an ABT member while on a family outing swimming at a lake. While pregnant with their child, Howard demanded Mask withdraw from membership with the ABT.

Mask and Howard knew the ABT would discipline Mask and would remove or obliterate his ABT tattoo by some method. In the process of severing his relationship with the ABT, Mask received three disciplinary beatings, the last two of which were at his and Howard's residence in a rural part of Kaufman County. Then Mask found his membership form in a stack to be "X-ed." He had previously seen a member "X-ed" by being beaten by approximately twenty to twenty-five members. Mask also found another member's cell phone left in his car that contained a text with Howard's picture and the words "die, kill, weep," which Mask understood meant the ABT would kill or seriously injure Howard and probably at least subject him to a gang beating or kill him.

On the afternoon of August 1, 2011, Howard went to Hunt County to pay for some drugs she and Mask had previously obtained and to retrieve their tattoo gun held for security for the drug debt. After she paid the drug debt and retrieved her tattoo gun, an ABT member, Jason Yates, partially displayed a gun in his waistband, put his hand on the butt of the gun, and ordered her to drive him to Mask at her home. Howard testified she feared for her life and complied by getting into the driver's seat of her Jeep SUV. Yates sat crouched down on the rear seat behind Howard while she drove back to Kaufman County. Soon they stopped to meet appellant, who was driving a white Ford F150 pickup. Appellant conferred with Yates then gave Yates bullets for his gun. Howard saw appellant give the bullets to Yates and heard Yates load his gun behind her. Then appellant sternly ordered Howard not to try anything stupid as he followed her.

Howard's Jeep stopped a short distance from her home with Yates still seated behind her. After further discussions between appellant and Yates, appellant drove to and entered Howard and Mask's home. According to Mask's testimony, appellant told Mask they were going to cut or burn his patch off that day and that he should get in the truck if he ever wanted to see his wife again. Mask managed to slip a gun into his waistband while putting on his shoes. He told his

–3–

son he loved him and he would always be in his heart, then he complied with appellant's order to get into the backseat on the passenger side of the pickup truck. As he drove off, appellant called someone to report, "Your boy got in the truck."

The F150 and the Jeep stopped in opposite lanes facing each other, separated by approximately one vehicle length. Mask saw the look of fear on Howard's face as she stared straight forward and refused to look at the vehicle Mask was in. When he saw Yates exit the Jeep with a gun in one hand and the tattoo gun in his other hand, Mask feared for his life and the life of his wife but realized he was trapped in the back seat of the pickup truck. Mask took his pistol off safety. Appellant heard the click and turned partially around towards Mask as Yates neared the truck's driver's side window. Mask fired two rounds before his gun jammed. The first bullet passed into the side and out the front of appellant's chest, striking and cracking the windshield. The second round went out the open driver's window missing both appellant and Yates.

While Mask cleared his gun's jam, Yates returned fire at Mask but his first bullet pierced through appellant's torso before striking Mask's arm. Both Yates and Mask continued shooting their semi-automatic weapons, never striking anyone else as they emptied their magazines. Yates intercepted Mask as Mask climbed out of the pickup truck, striking Mask on his head with the butt of Yates's gun five or six times. Mask fought off Yates and began to run.

When the shooting started, Howard struggled to get her Jeep in gear eventually pulling around to the far side of the field where Mask jumped into their Jeep. Howard drove him directly to the hospital in Terrell. There they each informed hospital personnel and then police about the shoot-out and its relation to the ABT. When the police arrived at the scene, Yates was gone. The F150 was riddled with approximately fourteen bullet holes. Methamphetamine was

–4–

found in the truck, and $4,080 was found in the truck and on appellant. Appellant sat in the front passenger seat smoking a cigarette, drinking a Dr. Pepper, and bleeding.

Appellant was airlifted to Parkland Hospital in Dallas, where he underwent successful surgery. Kaufman County sheriff's sergeant Justin Lewis received a call several days later from appellant's brother informing Lewis that appellant wanted to talk to him. At Parkland Hospital, appellant told Lewis appellant's version of the shootout. He stated that he and Yates were merely carrying out orders from the ABT to discipline Mask for leaving the ABT by covering over Mask's ABT tattoo, not cutting or burning it off. He claimed that the plan was that after the tattoo was managed, both he and Yates would fight Mask but not kill him. According to appellant, Howard voluntarily rode with Yates and Mask voluntarily rode with appellant— neither was kidnapped. Appellant asserted that Mask was at fault for escalating the conflict to a shootout by shooting first and not subjecting himself to the ABT's discipline.

While awaiting trial in the Kaufman County jail, appellant requested to meet with federal authorities. An assistant U.S. attorney from Washington, D.C., designated to prosecute ABT cases in federal court, led the federal law enforcement agents at the video-recorded meeting. Steve Cavit was one of the federal agents. Local law enforcement agents also attended, but the Kaufman County lead prosecutor in appellant's case attended only the beginning of the meeting, leaving a subordinate to monitor the meeting.

In the presence of his trial counsel, appellant conveyed the same information he had told Lewis at Parkland Hospital, but provided some additional background about the ABT that the federal authorities did not consider significant. Appellant made it clear he would never testify against the ABT, but he did want to explore whether the United States was considering prosecuting him and sending him to federal prison. At appellant's trial, Lewis testified about

appellant's statements at Parkland Hospital and Cavit testified about appellant's statements to the federal agents.

## ANALYSIS

*Sufficiency of the Evidence: Alleged Conflict in the Jury's Verdict*

Although not a model of clarity, appellant's first point of error appears to assert that there is a conflict between his acquittal for felon in possession of a firearm and his conviction for two aggravated kidnappings (of Howard and Mask) and one aggravated assault (on Howard). Appellant appears to contend there is a conflict because (1) all four counts included an instruction on the law of parties by which the jury could hold appellant responsible for Yates's possession, exhibition, and firing of Yates's pistol and (2) the three convictions for aggravated kidnapping and aggravated assault were dependent upon the use or exhibition of a firearm.[1] Appellant impliedly contends that by acquitting him of the possession of a firearm by a felon charge, the jury was demonstrating its belief that a firearm was not involved in any of the offenses and therefore he should have been acquitted of the kidnapping and assault charges as well. Appellant acknowledges, however, that even if he can establish a conflict in jury verdicts, that does not necessarily require a determination that there was insufficient evidence for the three convictions. Appellant then challenges the sufficiency of the evidence to support the three convictions. For the following reasons, we are not persuaded by appellant's arguments.

Inconsistent verdicts even when based on the same evidence do not require a determination that there is insufficient evidence to support a conviction." *Thomas v. State*, 352 S.W.3d 95, 101 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Jackson v. State*, 3 S.W.3d 58, 61 (Tex. App.—Dallas 1999, no pet.); *see Dunn v. United States*, 284 U.S. 390, 393–94 (1932), *overruled on other grounds by Sealfon v. United States*, 332 U.S. 575 (1948).

---

[1] Crawford's conviction for the aggravated kidnapping of Mask did not include a firearm element.

Inconsistent verdicts may simply result from a jury's desire to be lenient on some counts or to grant its own form of executive clemency. *Thomas*, 352 S.W.3d at 101; *Jackson*, 3 S.W.3d at 61; *see Dunn*, 284 U.S. at 393. When, therefore, an appellant asserts a conflict between a jury's verdicts on the same facts, we will examine the sufficiency of the evidence to support the verdict rather than speculate on how the jury arrived at its verdict. *See United States v. Powell*, 469 U.S. 57, 64 (1984) (reaffirming *Dunn* rule); *Jackson*, 3 S.W.3d at 61–62.

We first consider the State's contention that appellant failed to preserve this issue for review by failing to raise this issue in any way in the trial court citing *Nelson v. State*, 798 S.W.2d 867, 868 (Tex. App.—Dallas 1990, pet. ref'd). *Nelson* does not support the State's argument. In *Nelson*, we reviewed the sufficiency of the evidence. Only as to the trial court's receipt of a verdict with the inconsistent findings did we determine appellant's failure to complain in the trial court left nothing for us to review. Here, appellant expressly acknowledged in his argument that the relief he could obtain by asserting a conflict in the verdicts is this court's legal sufficiency review of the evidence. He entitled this section of his brief, "SUFFICIENCY OF THE EVIDENCE," and cited *Thomas*, discussed above, and *Viera v. State*, 08-10-00332-CR, 2012 WL 4101904 at *7 (Tex. App.—El Paso Sept. 19, 2012, pet. ref'd) which followed *Thomas*. Because legal sufficiency of the evidence may be challenged for the first time on appeal and we must consider it, we will consider appellant's complaint. *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001).

In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the

testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Jackson*, 443 U.S. at 319; *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony and therefore, is free to accept or reject any or all evidence presented by either side. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see also Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

All three convictions appellant challenges as lacking sufficient evidence required proof that he committed the underlying offenses as a member of a criminal street gang, the ABT. A criminal street gang is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PEN. CODE ANN. § 71.01(d) (West 2011). All three convictions allowed the jury to convict appellant based on the law of parties. Accordingly, appellant was criminally responsible for an offense committed by Yates's conduct if, acting with intent to promote or assist the commission of the offense, appellant solicited, encouraged, directed, aided, or attempted to aid Yates to commit the offense. *Id*. § 7.02.

The jury could convict appellant of aggravated kidnapping if it found beyond a reasonable doubt either that (a) appellant intentionally or knowingly abducted Howard or Mask with the intent to use them as a hostage; inflict bodily injury on him; or terrorize either of them; or (b) appellant intentionally or knowingly abducted Howard while using or exhibiting a deadly weapon. *Id*. § 20.04; *see also id*. § 20.01(1) ("restrain"); *id.* § 20.01(2) ("abduct"). The jury could convict appellant of aggravated assault if it found beyond a reasonable doubt he intentionally or knowingly threatened Howard with imminent bodily injury while using or exhibiting a deadly weapon. *Id*. §§ 22.01(a)(2), 22.02(a)(2).

Viewed in the light most favorable to the verdicts, as summarized above the evidence in appellant's case showed his guilt (at a minimum) as a party to the aggravated kidnapping of both Mask and Howard and the aggravated assault on Howard. Both Howard and Yates threatened Howard with imminent bodily injury, and Yates did so while exhibiting a deadly weapon. Moreover, the record is replete with evidence showing both Howard and Mask were held against their will in furtherance of appellant's plan to terrorize Mask or cause Mask serious bodily injury by removing his tattoo. *See* TEX. PENAL CODE ANN. §§ 20.04, 22.02. The evidence further showed that appellant acted as a member of a criminal street gang in committing the offenses. We overrule appellant's first point of error.

*Ineffective Assistance of Counsel*

Appellant contends in his next point of error that his trial counsel provided ineffective assistance by failing to obtain a signed proffer letter when appellant and his counsel met with the federal agents while awaiting trial. Appellant argues his trial attorney's failure to obtain a signed proffer letter is patently below an objective standard of reasonableness. He then urges that the admission of his statements to federal agents harmed him because it was the primary evidence of his involvement with the ABT.

To prevail on his claim of ineffective assistance of counsel, appellant must show his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability the results of the proceedings would have been different in the absence of counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to make the required showing either of deficient performance or

sufficient prejudice defeats an ineffectiveness claim. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

We ordinarily will not declare trial counsel ineffective where there is no record showing counsel had an opportunity to explain himself. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Without evidence of the strategy employed, we will presume sound trial strategy. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Texas procedure makes it "virtually impossible" for appellate counsel to present an adequate ineffective assistance of trial counsel claim on direct review. *Trevino v. Thaler*, 569 U. S. ___, ___, 133 S. Ct. 1911, 1918 (2013). This is because the inherent nature of most ineffective assistance of trial counsel claims means that the trial court record "will often fail to 'contai[n] the information necessary to substantiate' the claim." *Id.* (quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (en banc)).

Here, appellant cannot establish ineffective assistance of his trial counsel. Nothing in the record before us shows that he was entitled to obtain a proffer letter from the federal authorities when he met with them. No plea bargain discussions occurred at the meeting. No federal charges were pending or have ever been filed against appellant, and appellant specifically stated that he would not testify against the ABT. In other words, appellant has failed to show that his counsel would have been able to obtain a proffer letter if he had sought one. In addition, we do not know trial counsel's strategy in failing to pursue a proffer letter with regard to appellant's questioning by the federal authorities. Furthermore, appellant fails to establish any harm from Cavit's testimony. It is undisputed that appellant voluntarily told substantially the same information to Lewis three days after the shootout. In addition, Mask and Howard testified appellant was a member of the ABT corroborated by appellant's ABT tattoos and the expert

–10–

testimony explaining them. Cavit's testimony about appellant's statements to federal agents was merely cumulative of other evidence presented to the jury.

Appellant has failed to show ineffective assistance under either prong of the *Strickland* standard. We overrule appellant's second point of error.

## CONCLUSION

Our review of the record demonstrates there was legally sufficient evidence of appellant's guilt for the aggravated kidnappings of Howard and Mask and the aggravated assault on Howard. Further, appellant failed to establish that his trial counsel provided ineffective assistance. Accordingly, we overrule appellant's issues and affirm the judgment of the trial court.

/David W. Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. 47
121072F.U05

–11–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAMES CRAWFORD, Appellant

No. 05-12-01072-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th District Court, Kaufman County, Texas
Trial Court Cause No. 30096-422.
Opinion delivered by Justice Evans.
Justices Lang and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of July, 2013.

/David W. Evans/
DAVID EVANS
JUSTICE