# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00598-CR

**Cortez Williams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-10-302575, THE HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Cortez Williams of indecency with a child by sexual contact and indecency with a child by exposure, and assessed his punishment at confinement for 18 years and 10 years in the Institutional Division of the Texas Department of Criminal Justice, respectively. *See* Tex. Penal Code § 21.11(a)(1), (a)(2)(B), (d). In a single point of error on appeal, Williams challenges the sufficiency of the evidence to support his conviction for indecency with a child by exposure. In addition, through our own review of the record, we have found clerical errors in the written judgments of conviction. We will modify the judgments to correct the clerical errors and, as modified, affirm the judgments of conviction.

## BACKGROUND

Thirteen-year-old K.H. met 33-year-old Williams one afternoon in November 2010 as she was walking home from school. Williams stopped his car next to K.H. and, to avoid looking suspicious to the police car down the street, told her to get in his car so they could talk.[1] K.H. got in and the two drove around for a while, smoking marijuana Williams provided. Williams gave K.H. his phone number and, less than an hour later, dropped her off where he had picked her up. K.H. finished walking home, changed clothes, and went to a friend's house.[2] Later, she called Williams from her friend's to ask him to come smoke marijuana with them. Williams picked up the three girls (K.H., her friend, and a friend of K.H.'s friend) and drove to a car wash where all four of them smoked marijuana he provided. After less than an hour, Williams dropped the girls back off at the friend's house. K.H. stayed at her friend's for a few more hours, until after dark, then called Williams again to ask for a ride home. Williams picked K.H. up. Instead of driving her home, however, he drove to a parking lot behind a business, closed for the day, and parked behind a trash dumpster.

During that drive, Williams and K.H. again smoked marijuana that he provided. At trial, K.H. testified that she was "uncontrollably high." Though she had smoked marijuana before, even in amounts similar to that day, she had never felt like she did that night. Once they were parked, Williams began touching K.H.—her shoulders, her breasts over her clothing, and her legs.

---

[1] According to K.H.'s testimony, Williams identified himself to her as "Shawn." K.H. identified Williams in the courtroom as the person she knew as "Shawn."

[2] Subsequent testimony indicated that K.H.'s friend actually lived in an apartment, but the testimony refers to her friend's "house."

K.H. testified that Williams pulled her pants and underwear down her legs, not all the way off, but far enough down so that her "private area" was exposed. According to K.H., Williams stopped touching her when a police officer appeared on the scene. K.H. testified that when the police arrived she was both scared, because she was under the influence, and relieved, because she did not want to have sex with Williams.

Jared Jensen, a patrol officer with the Austin Police Department (APD), testified that he pulled into the closed business's parking lot around 8 p.m. as part of his regular patrol and noticed a white Cadillac Escalade parked next to the dumpster in the typically empty parking lot. Considering the situation suspicious, he decided to investigate and called for backup assistance. He approached the driver's side of the SUV and asked the driver, subsequently identified as Williams, to roll down the window. Officer Jensen testified that he immediately saw that the female passenger, later identified as K.H., had nothing on from the waist down. Her jeans and underwear were down around her shins and her "private area" was visible. The officer had both Williams and K.H. step out of the SUV. When Williams exited the car, Officer Jensen observed that his belt was unbuckled, his zipper was down, and his boxer shorts were hanging out of the bottom of one leg of his pants. When Officer Jenkins inquired about the situation, Williams explained that he was "fixing to suck on her" and later expressed that he was "going to bang her." However, throughout the encounter, Williams repeatedly insisted that all they had done was kiss because the officer's arrival interrupted their activities. Officer Jensen identified K.H. as a minor[3] and noted that she appeared highly

---

[3] K.H. initially told Officer Jensen that she was 17, but subsequently provided her correct date of birth which revealed that she was 13 years old.

intoxicated on some substance. At trial, he described her as being "pretty out of it" and indicated she was unable to provide very much information.

About the time Officer Jensen had secured Williams and K.H., John Ridenour, a patrol officer with APD, arrived in response to Jensen's call for backup. He made the same observations about Williams's appearance, specifically the disarray of his clothing. Officer Ridenour testified that Williams explained that his clothing was like that because he and K.H. were "about to fuck." Williams told Ridenour that he was with K.H. "to get some pussy" but that he had not done anything yet because Officer Jensen showed up. Ridenour testified that he believed that Williams knew K.H. was younger than 18 years old because he repeatedly told the officers, "I didn't touch her. She told me she was 18." Because there was nothing illegal about touching an 18-year-old, the officer considered Williams's juxtaposition of these statements, asserted repeatedly, suspicious. Ridenour confirmed Jensen's assessment regarding K.H.'s intoxicated state, saying that she appeared to be highly intoxicated on some substance and that her responses to questions were very slow.

The encounter concluded when Officer Jensen arrested Williams and took him to jail on an outstanding warrant and Officer Ridenour took K.H. home. Ridenour informed K.H.'s mother about the situation, and heard K.H. tell her mom that she was trying to make money for the family. She told her mother, in Ridenour's presence, that "she was going to let the guy lick her for money."

Carey Chaudoir, a child abuse detective with APD, was assigned to investigate the case. As part of her investigation, she interviewed both Williams and K.H. In his voluntary interview,[4] Williams told Detective Chaudoir that he went to pick up K.H. when she called the

---

[4] A video recording of the interview was admitted as evidence and published to the jury.

4

second time because she told him she was high and horny and he thought it was going to be "an easy score," meaning sex. He told her that he had not yet touched K.H. when the police arrived because he was still in the preparation phase. He explained that he needed to get high before he was able to achieve an erection. He admitted that he had been smoking marijuana with crack cocaine added to the blunt to "get ready" when Officer Jensen arrived. Williams told the detective that K.H. had pulled down her own pants while waiting for him to get ready. He further explained that he did not need to pull K.H.'s pants down because if she was interested in him sexually, she needed to show him by pulling her own pants down. Chaudoir testified that Williams also expressed in the interview that he did not need to have sex with a minor because, "even though it might be an easy piece of ass," women were "a dime a dozen" for him. Detective Chaudoir did not testify about all the details of her interview with K.H. However, concerning the particular events surrounding the exposure of K.H.'s genitals, she testified that K.H. told her that Williams had unbuttoned her pants and pulled them down to her mid-thigh area, pulling her underwear with them.

Williams was subsequently charged by indictment with attempted aggravated sexual assault of a child (Count I), indecency with a child by sexual contact (Count II), and indecency with a child by exposure (Count III). At trial, K.H. and the three law enforcement officers testified about the above-described events. The defense did not call any witnesses nor did Williams testify. The jury found Williams guilty of indecency with a child by sexual contact as alleged in Count II and indecency with a child by exposure as alleged in Count III, but acquitted him of attempted aggravated sexual assault of a child as alleged in Count I. During the punishment phase of trial, the State presented evidence of Williams's criminal history and his extraneous violent conduct toward

5

several women. The defense called two witnesses, including K.H.'s mother, and Williams testified on his own behalf. The jury assessed Williams's punishment at 18 years in prison for indecency with a child by sexual contact and 10 years in prison for indecency with a child by exposure. The trial court sentenced Williams in accordance with the jury's verdicts, and, denying the State's request for cumulative sentences, ordered the sentences to be served concurrently. Williams now appeals.

## NUNC PRO TUNC JUDGMENTS

In this appeal, the district clerk filed a supplemental clerk's record containing nunc pro tunc judgments signed by the trial court on November 6, 2012, apparently in response to the State's motion requesting such.[5]

Rule 23.1 of the Texas Rules of Appellate Procedure vests a trial court with the authority to correct clerical mistakes or errors in a judgment through entry of a nunc pro tunc judgment so long as the defendant has not appealed. *See* Tex. R. App. P. 23.1. Absent certain exceptions not relevant here, once a defendant has filed a notice of appeal and the record has been filed with the appellate court, the trial court lacks authority to act on the case until it receives the appellate court's mandate. *See* Tex. R. App. P. 25.2(g); *see also Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995) (interpreting former rule of appellate procedure 40(b)(2), predecessor

---

[5] The motion sought to correct the language in the judgments concerning the applicability of the sex offender registration requirements of Chapter 62 of the Texas Code of Criminal Procedure and to reflect the age of the victim at the time of the offenses. The original judgments in this case state that the sex offender registration requirements do not apply to Williams and indicate that the age of the victim at the time of the offense was "not applicable." The nunc pro tunc judgments reflect that the Chapter 62 sex offender registration requirements do apply to Williams and indicate that the age of the victim at the time of the offense was younger than 17 years.

to current rule 25.2). Thus, a trial court may not render a nunc pro tunc judgment after the appellate record is filed in the court of appeals. *See* Tex. R. App. P. 25.2(g); *Martinez v. State*, No. 01-12-00361-CR, 2013 WL 3957698, at *4–5 (Tex. App.—Houston [1st Dist.] July 30, 2013, no pet.) (mem. op., not designated for publication) (trial court lacked authority to enter nunc pro tunc judgment after appellate record had been filed); *Green v. State*, No. 03-12-00225-CR, 2012 WL 6097308, at *1 n.1 (Tex. App.—Austin Dec. 6, 2012, pet. ref'd) (mem. op., not designated for publication) (same); *Hightower v. State*, No. 06-09-00057-CR, 2009 WL 1974396, at *1 (Tex. App.—Texarkana July 10, 2009, no pet.) (mem. op., not designated for publication) (same); *see also Green*, 906 S.W.2d at 939 (findings of fact and conclusions of law, entered after filing of appellate record, were void).

Here, the appellate record had already been filed in this Court when the nunc pro tunc judgments were signed on November 6, 2012. Accordingly, the trial court lacked jurisdiction to enter the nunc pro tunc judgments and they are void. Consequently, we disregard the nunc pro tunc judgments contained in the supplemental clerk's record and review the original judgments of conviction.[6]

---

[6] The judgment of conviction for indecency with a child by sexual contact contained in the record, signed September 21, 2011, indicates that it is a nunc pro tunc judgment. We note, however, that at that time this nunc pro tunc judgment was signed, the notice of appeal had not yet been filed. Accordingly, the case had not yet been appealed by the defendant nor had the appellate record been filed. Thus, the trial court had authority to enter this nunc pro tunc judgment. We review this nunc pro tunc judgment as the "original" judgment for that offense.

## SUFFICIENCY OF THE EVIDENCE

Count III of the indictment charged Williams with indecency with a child by exposure, alleging that he

> did then and there intentionally and knowingly with the intent to arouse and gratify the sexual desire of the said Cortez Williams cause [K.H.], a child younger than 17 years of age and not the spouse of the said Cortez Williams, to expose any part of the genitals of the said [K.H.].

In his sole point of error, Williams asserts that the evidence is insufficient to support his conviction for this offense because of (1) conflicting evidence at trial and (2) inconsistent verdicts.

### *Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff*

8

*v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. arts. 36.13, 38.04. Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen*, 249 S.W.3d at 688; *see Laster*, 275 S.W.3d at 517–18. We consider only whether the jury reached a rational decision. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

### *Conflicting Evidence*

Williams challenges the sufficiency of the evidence on the issue of causation. He first argues the evidence is insufficient to show that he caused K.H. to expose her genitals because there was conflicting evidence about who pulled down her pants.

9

At trial, K.H. testified that Williams pulled her pants, along with her underwear, down, but not all the way off, exposing her "private area;" though she admitted on cross examination that she had to "lift up" to help Williams get her pants down. Detective Chaudoir testified that K.H. told her that Williams unbuttoned her pants and pulled them, along with her underwear, down to about her mid-thigh area. But, the record also contained some evidence indicating that K.H. pulled her own pants down. On cross examination, Officer Jensen testified that both Williams and K.H. told him at the scene that K.H. pulled her pants down and he documented these statements in his police report.[7] Williams later repeated the assertion that K.H. pulled her own pants down during his interview with Detective Chaudoir.

In his brief, Williams essentially concedes that K.H.'s trial testimony alone is sufficient to support his conviction for indecency with a child by exposure. *See* Tex. Code Crim. Proc. art. 38.07(a), (b)(1) (uncorroborated testimony of child victim is sufficient to support conviction for sexual offense); *see also Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008). Nevertheless, he argues that the inconsistencies in her statements about who pulled down her pants render the evidence insufficient to support the conviction. We disagree. The inconsistencies or conflicts between statements made at the scene or during Williams's interview and K.H.'s statements to the detective or her trial testimony were all before the jury. Reconciliation of any conflicts or contradictions in the evidence is within the exclusive province of the jury.

---

[7] On the dash-cam recording from Officer Jensen's patrol car, Williams can be heard several times telling the officers that K.H. pulled her pants down. K.H.'s statements on the recording, however, are difficult to discern and are at times inaudible.

10

*Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Jimenez v. State*, 240 S.W.3d 384, 402 (Tex. App.—Austin 2007, pet. ref'd); *see* Tex. Code Crim. Proc. arts. 36.13, 38.04. The jury is free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). Here, the record reflects a conflict in the evidence, and the jury, as the exclusive judge of the facts, was entitled to weigh and resolve these conflicts. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. We find no flaw in the jury's resolution of this conflict against Williams.

Moreover, contrary to Williams's contention, the State did not have to prove that he pulled down K.H.'s pants in order to prove that he caused K.H. to expose her genitals. Proof of causation is sufficient if the evidence establishes that "but for" the defendant's conduct, the alleged result would not have occurred.[8] *Barcenes v. State*, 940 S.W.2d 739, 745 (Tex. App.—San Antonio 1997, pet. ref'd); *see* Tex. Penal Code § 6.04(a); *see also Wooten v. State*, 267 S.W.3d 289, 296 (Tex. Crim. App. 2008). Whether such a causal connection exists is a question for the jury's determination. *See Wooten*, 267 S.W.3d at 295.

---

[8] While the Penal Code does not define "cause," as the State notes in its brief, it does explicitly address the issue of when causation results in criminal responsibility for conduct. *See* Tex. Penal Code § 6.04(a). The concept of "but for" causation contained in this statute is consistent with the common meaning of "cause." *See, e.g.*, *Webster's Third New Int'l Dictionary* 356 (2002) (defining transitive verb "cause" as "to serve as cause or occasion of; bring into existence; make"); *American Heritage Dictionary* 214 (1973) (defining transitive verb "cause" as "to be the cause of; effect; make happen; bring about"); *see also* Tex. Gov't Code § 311.011(a) (Code Construction Act provision requiring that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage").

Here, the evidence established that Williams, a 33-year-old man, picked up K.H., a 13-year-old child, that night knowing she was under the influence of drugs and believing she was "an easy score." He provided her with yet more marijuana, possibly laced with crack cocaine, that rendered her "uncontrollably high" such that she felt like she did not have control over her words or her body. He then drove her to a remote location to have sex with her. After parking behind the dumpster, he removed (or began to remove) his clothing, and was kissing and touching K.H. in a sexual manner when he was interrupted by the police. From this evidence, a rational jury could have determined that—regardless of who physically pulled down K.H.'s pants—"but for" Williams's conduct, K.H. would not have been in the passenger seat of his SUV with her pants down and her genitals exposed for the gratification of his sexual desire. Furthermore, Officer Ridenour's testimony that K.H. told her mother she was "just trying to make money for the family" and was "going to let the guy lick her for money" suggests that Williams offered or agreed to give K.H. money in exchange for sex. A rational jury could have concluded that this monetary inducement caused K.H. to engage in behavior that resulted in her genitals being exposed. In addition, from Williams's boastful comments to the detective, the jury could have reasonably inferred that he instructed K.H. to pull down her pants to prove her interest in engaging in sexual activities with him thereby causing her to expose her genitals.

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Williams caused K.H. to expose her genitals for the gratification of his sexual desire. Therefore, the evidence is legally sufficient to support Williams's conviction for indecency with a child by exposure.

*Inconsistent Verdicts*

Williams next argues that because the jury did not find him guilty of the additional charge of attempted aggravated sexual assault of a child, there is insufficient evidence to support the conviction for indecency with a child by exposure. He maintains that the jury's not guilty verdict demonstrates that the jury concluded that he did not pull K.H.'s pants down.[9] In effect, Williams asks us to find the evidence legally insufficient because the jury's two verdicts, acquitting him of attempted aggravated sexual assault of a child and convicting him of indecency with a child by exposure, are inconsistent.

However, as just discussed, the State was not required to prove that Williams pulled down K.H.'s pants in order to prove that he caused K.H. to expose her genitals. More importantly, inconsistent verdicts, even when based on the same evidence, do not require reversal on the ground of legal insufficiency. *Dunn v. United States*, 284 U.S. 390, 393–94 (1932), *overruled on other grounds by Sealfon v. United States*, 332 U.S. 575 (1948); *Thomas v. State*, 352 S.W.3d 95, 101 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Jackson v. State*, 3 S.W.3d 58, 61 (Tex. App.—Dallas 1999, no pet.); *see Moore v. State*, No. 04-12-00490-CR, 2013 WL 3148650, at *1 (Tex. App.—San Antonio June 19, 2013, pet. struck) (mem. op., not designated for publication). Inconsistent verdicts may simply result from a jury's desire to be lenient on some counts or to grant

---

[9] Count I of the indictment charged Williams with attempted aggravated sexual assault of a child, alleging that Williams

> with the intent to commit the offense of Aggravated Sexual Assault of a Child did then and there commit an act that tended but failed to effect the commission of said offense, to wit: by pulling down the pants of [K.H.], a child younger than 14 years of age and not his spouse.

13

its own form of executive clemency. *Thomas*, 352 S.W.3d at 101; *Jackson*, 3 S.W.3d at 61; *see Dunn*, 284 U.S. at 393. Even where an inconsistent verdict might have been the result of compromise or mistake, the verdict should not be upset by appellate speculation or inquiry into such matters. *United States v. Powell*, 469 U.S. 57, 64–67 (1984) (reaffirming *Dunn* rule); *Jackson*, 3 S.W.3d at 61; *see Dunn*, 284 U.S. at 394. Consequently, when an appellant asserts a conflict between a jury's verdicts on the same facts, we are limited solely to determining whether there is sufficient evidence to support the charge on which a conviction is returned. *Jackson*, 3 S.W.3d at 61–62; *Moore*, 2013 WL 3148650, at *1; *see Dunn*, 284 U.S. at 393–94. We examine the sufficiency of the evidence to support the verdict rather than speculate on how the jury arrived at its verdict. *Jackson*, 3 S.W.3d at 61–62; *see Dunn*, 284 U.S. at 394. What the fact-finder did with the remainder of the charge is immaterial. *Jackson*, 3 S.W.3d at 62; *Moore*, 2013 WL 3148650, at *1.

As previously discussed, and as Williams concedes in his brief, the trial testimony of K.H. is sufficient to support Williams's conviction for indecency with a child by exposure. Thus, it is irrelevant that the jury acquitted Williams of attempted aggravated sexual assault of a child.

For the forgoing reasons, we hold that the evidence is sufficient to support Williams's conviction for indecency with a child by exposure.[10] We overrule Williams's sole point of error.

---

[10] Although a legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010), Williams urges us to "disagree" with the fact-finder's conclusion regarding who caused the exposure of K.H.'s genitals (as demonstrated by the guilty verdict for indecency with a child by exposure). He maintains that we have authority to do so "when the record clearly indicates that such a step is necessary to arrest the occurrence of a manifest injustice." *See Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). Such authority, however, was granted when the Court of Criminal Appeals adopted a factual-sufficiency review in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 131 (Tex. Crim. App. 1996), *overruled by Brooks*,

## CLERICAL ERRORS IN JUDGMENTS

As discussed earlier in this opinion, the trial court entered nunc pro tunc judgments in this case to correct errors in the judgments of conviction. But, because the trial court lacked authority to enter those judgments, we have concluded that the nunc pro tunc judgments are void. However, this Court has the authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

The judgments in this case state that the sex offender registration requirements of Chapter 62 of the Texas Code of Criminal Procedure do not apply to Williams and indicate that the age of the victim at the time of the offense was "not applicable." However, when a defendant is convicted of an offense for which registration as a sex offender is required under Chapter 62, the judgment must contain a statement that the registration requirement of that chapter applies to the defendant and a statement of the age of the victim of the offense. *See* Tex. Code Crim. Proc. art. 42.01, § 1(27). Here, the record demonstrates that Williams was convicted of offenses that require registration under Chapter 62. *See id.* arts. 62.001(5)(A), .051(a). Thus, the judgments were required to reflect Williams's duty to register as a sex offender as well as K.H.'s age at the time of the offenses. The trial court had no discretion but to enter the requisite language in the judgments

---

323 S.W.3d at 895, 912. We no longer employ distinct legal and factual sufficiency standards when reviewing the sufficiency of the evidence to sustain a criminal conviction. *See Merritt v. State*, 368 S.W.3d 516, 525 n.8 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 912. Instead, the only standard for determining whether the evidence proves the defendant's guilt beyond a reasonable doubt is the *Jackson* due-process standard. *Brooks*, 323 S.W.3d at 912; *see Merritt*, 368 S.W.3d at 525 n.8; *Griego v. State*, 337 S.W.3d 902 (Tex. Crim. App. 2011). We decline Williams's request to apply the factual-sufficiency standard in our legal-sufficiency review in this case.

of conviction, and the failure to do so was a clerical error. *See, e.g.*, *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988) (trial court had no discretion but to reflect affirmative deadly weapon finding in judgment as mandated by article 42.12, § 3f(a)(2) of Texas Code of Criminal Procedure; failure to do so was error of clerical nature).

In addition, we observe that the judgment of conviction for indecency with a child by exposure states that the "Statute for Offense" is "21.11(a)(1) Penal Code." The statute for indecency with a child by exposure as alleged here, however, is section 21.11(a)(2)(B) of the Penal Code.

Accordingly, we modify both judgments of conviction to reflect that the sex offender registration requirements of Chapter 62 apply to Williams and to reflect that the age of the victim at the time of the offense was 13 years. We further modify the judgment of conviction for indecency with a child by exposure to state that the "Statute for Offense" is "21.11(a)(2)(B) Penal Code."

**CONCLUSION**

Finding the evidence legally sufficient to support Williams's conviction for indecency with a child by exposure, we modify the judgments of conviction as noted above and affirm the trial court's judgments as modified.

16

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Modified and, as Modified, Affirmed

Filed:   December 31, 2013

Do Not Publish