

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00770-CR

Mario Anthony **GOMEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR2037
Honorable Joey Contreras, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: December 11, 2019

AFFIRMED

Appellant Mario Anthony Gomez was charged by indictment with one count of armed robbery. After a Bexar County jury found Gomez guilty, the trial court assessed punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice and made an affirmative finding of a deadly weapon. On appeal, Gomez contends (1) the evidence was insufficient to find him guilty of aggravated robbery and (2) the trial court erred in allowing the State to use demonstrative evidence. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The State called several witnesses in the presentation of their case-in-chief. We relate relevant portions of their testimony below.

**A.     Albert Flores**

On December 15, 2017, at approximately 4:15 a.m., Albert Flores checked in with his employer Star Shuttle, located on the north side of San Antonio. As was his normal routine, he left the offices to check his van and start finishing his paperwork inside the van. Flores's van was located at the very edge of the Star Shuttle parking lot. Mr. Flores testified he looked up and saw "a gentleman coming in through this open gate" for the parking lot. Mr. Flores explained he believed the gentleman was "a colleague from work, because he was wearing khaki pants [and he] was wearing a jacket." Mr. Flores thought the man might need assistance because the company is always hiring new people. As the gentleman approached his vehicle, Mr. Flores rolled down his window.

To his surprise, the man told Mr. Flores,

Look, capital-M, capital-F, I need you to leave the van on. I need you to put your wallet on the seat. Put your money on the seat, and get off.

Mr. Flores told the man that he should just "go ahead and keep on going where you are going." In response, the man pulled down his jacket zipper, took out a gun, and pointed it at Mr. Flores. The man asked Mr. Flores, "Do you think this is a MF joke?" It was then Mr. Flores realized the man was "for real."

Mr. Flores testified the gun was either a .32 or a .38 black revolver, but he was more inclined to believe it was a .38. Mr. Flores described the man as serious, but his eyes were "blushing." Mr. Flores turned off the van and dropped the keys on the ground. He described the man as "swerving." Mr. Flores was hoping he could exit the vehicle and "try to slug him with an

umbrella that [he carried]." Mr. Flores quickly opened the door and the man backed up a little. Mr. Flores went to the back of the van, opened the back door of his van and retrieved his umbrella, and was walking towards the man. The man started walking backward, little by little, "like swerving, like if he wanted to fall down." Mr. Flores testified he swung at him one time with the umbrella but missed. At that point, the man started running out the same entrance he came in, still with the gun in his hand.

Mr. Flores ran down the property line and could see the man running west on Park Ridge toward US Highway 281 and then turn south onto US Highway 281. A vehicle approached Mr. Flores and the female driver asked him if he was all right. Mr. Flores pointed to the man running; he told her the man tried to rob him. The driver told Mr. Flores to go inside and call 911 and she was going to follow the man that robbed him. Mr. Flores told her to be careful and he went inside, called 911 and his office.

During his testimony, Mr. Flores identified Gomez as the individual that attempted to rob him on December 15, 2017.

B.    **San Antonio Police Department Officer Richard Martinez**

San Antonio Police Officer Richard Martinez was assigned to K-9 detail. On December 15, 2017, San Antonio police were investigating an armed robbery; Officer Martinez's initial response came in at 4:41 a.m. When he arrived at the Star Shuttle parking lot, other officers were already out looking for the suspect. The officers located the suspect in a residential area, underneath a vehicle at a house. Officer Martinez was asked to respond in case the suspect did not comply. Officer Martinez further explained that the officers were on high alert because the suspect was located in a residential area, they knew he was armed, but they did not know his mental state.

When Officer Martinez arrived at the scene, the officers had the area surrounded and the suspect was laying underneath the vehicle—not complying with officer demands and not moving.

Officer Martinez testified the officers could not see the suspect's hands. The suspect was commanded several times to show his hands and to come out from under the vehicle. The suspect failed to comply. Eventually, the officers sent the K-9 underneath the vehicle to apprehend the suspect. At approximately 5:32 a.m., the dog finally forced the suspect out from under the vehicle; in doing so, the dog bit the suspect's leg. Officer Martinez testified the dog was able to keep control of the suspect long enough for the officers to apprehend him. The suspect was identified as Mario Anthony Gomez and he was treated by EMS for the dog bites.

Officer Martinez testified Gomez did not have a weapon on him when he was apprehended. However, the officer explained that based on his experience, past suspects fleeing an incident had "tossed" weapons and the weapons had never been found. Officer Martinez further testified the size of area the officers were canvassing for the weapon made locating a weapon "very difficult."

On cross-examination, Officer Martinez described the pants Gomez was wearing as light-colored blue jeans and shoes that were predominantly black or dark in color, in contrast to the khaki pants and white shoes described by Mr. Flores. However, on redirect, Officer Martinez clarified the shoes also had a portion that was white; depending on how Gomez's pants were hanging down, it was possible only the white part of the shoe would be visible.

## C.    San Antonio Police Detective Robert Neaves

San Antonio Police Detective Robert Neaves administered the photographic lineup for Mr. Flores on December 15, 2017. Detective Neaves explained the San Antonio Police Department's policy is that the person who creates the lineup is familiar with the case, but the person who administers the lineup is someone who is not familiar with the case. He further explained that before a lineup is presented, the individual administering the lineup tries to explain the process to the witness reviewing the photographs. For example, Detective Neaves testified he provides warnings such as the following:

People are going to appear different in the picture. The background may be different. Their complexion may be different. They may have a mustache in the photograph from their driver's license photo. And at the time of the offense, they didn't have a mustache, or vice versa. Hair styles are different. Lengths of hair, things like that.

Detective Neaves reiterated that the witness is told the suspect may not be included in the pictures being presented, so the witness is specifically told they do not have to select anyone.

When Detective Neaves presented the photo lineup, he did not know Gomez. Detective Neaves was not involved in creating the photo lineup, and he did not know which photograph was that of Gomez. He affirmatively testified that he did not believe there was any way he could have given any suggestive clues to Mr. Flores before Mr. Flores identified the suspect. Detective Neaves testified Mr. Flores identified #2 in the photo lineup as the assailant, but Detective Neaves did not know at the time whether Gomez was the individual in picture #2.

Following the close of testimony, and outside the jury's presence, defense counsel made an oral motion for a directed verdict. The trial court denied the motion.

The jury found Gomez guilty and the trial court assessed punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Gomez raises two issues on appeal: the trial court's failure to grant his motion for a directed verdict and the trial court's error in allowing the State's use of demonstrative evidence. We turn first to Gomez's motion for a directed verdict.

DENIAL OF MOTION FOR DIRECTED VERDICT

A. **Standard of Review**

We review a trial court's ruling on a directed verdict under the same standard as a legal sufficiency review. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). In reviewing the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the prosecution, [to determine] whether *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

"The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Merritt*, 368 S.W.3d at 525; *accord Adames*, 353 S.W.3d at 860. Juries may draw reasonable inferences from facts supported by the evidence but may not draw conclusions based on speculation. *Merritt*, 368 S.W.3d at 525. Reasonable inferences may be supported by direct or circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury alone is responsible to resolve any conflicts in the evidence, weigh the evidence, assess credibility, and draw any reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *see also Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

## B.    Arguments of the Parties

Gomez contends the only evidence linking him to the offense came through Mr. Flores; and although Mr. Flores identified him in a photographic lineup, the lineup was not reliable. Gomez contends he was the only person wearing "jail scrubs" in the photographic lineup thereby making his photograph unreasonably suggestive.

The State counters that although Mr. Flores's testimony alone is sufficient to convict Gomez, the overall testimony is overwhelming to support the jury's conviction.

## C.      Aggravated Robbery

A person commits aggravated robbery if he uses or exhibits a deadly weapon while committing robbery as defined in Penal Code section 29.02.   TEX. PENAL CODE ANN. § 29.02(a)(2); *Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.). "Robbery" is committed when, in the course of committing theft and with intent to obtain or maintain control of the property, a person intentionally, knowingly, or recklessly causes bodily injury to another.  TEX. PENAL CODE ANN. § 29.02(a)(1); *Kirven v. State*, 293 S.W.3d 233, 236 (Tex. App.—Waco 2009, no pet.).  "Theft" occurs when a person unlawfully appropriates property with intent to deprive the owner of the property.  TEX. PENAL CODE ANN. § 31.03(a); *McCay v. State*, 476 S.W.3d 640, 644 (Tex. App.—Dallas 2015, pet. ref'd).  "Appropriation" is unlawful when it "is without the owner's effective consent."  TEX. PENAL CODE ANN. § 31.03(b)(1); *McCay*, 476 S.W.3d at 645.

Gomez does not contest the date on which the crime occurred or the manner in which the State alleged the incident occurred.  Gomez's appellate complaint is limited to whether the State proved he was the individual that committed the aggravated robbery.

## D.      Analysis

We remain mindful the jury is called upon to resolve all conflicts in the testimony, to weigh the evidence, to assess the credibility of the witnesses, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 318–19 (explaining a reviewing court should not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt"); *accord Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).  An appellate court reviews circumstantial and direct evidence in the same manner, and circumstantial evidence

alone may be sufficient to establish a defendant's guilt. *Merritt*, 368 S.W.3d at 525 (citing *Hooper*, 214 S.W.3d at 13); *Hines*, 383 S.W.3d at 623; *see also Thomas v. State*, 352 S.W.3d 95, 99 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Although he did not have the handgun on his person at the time he was apprehended, and his pants were light jeans and not khakis, the jury could reasonably conclude the other evidence outweighs these arguments. As Officer Martinez explained, suspects regularly discard a weapon as they flee a crime scene. The jury could reasonably conclude Gomez acted accordingly in this case. Whether Mr. Flores was correct in the color of the assailant's pants and shoes is less relevant than whether he could identify the individual's face and whether the individual was located where Mr. Flores indicated he had fled. *See Sosa v. State*, 177 S.W.3d 227, 230 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding flight is some evidence of guilt). Additionally, Gomez's behavior in refusing to exit from under the vehicle, when surrounded by officers, was highly suspect.

Although Gomez contends that he was the only individual in "jail scrubs," the jury viewed the photographic lineup and could have reasonably concluded the photographic lineup was not unreasonably tainted toward one individual, specifically Gomez. We further note, Mr. Flores not only identified Gomez in the lineup, but he also identified Gomez in the courtroom. Mr. Flores provided a description of the assailant and his clothes; although not identical, considering the lighting at 4:15 a.m. and the excited nature of the events, the jury could have reasonably concluded Mr. Flores's description was reasonably close to the clothes and physical characteristics of Gomez when he was located under the vehicle. Gomez was wearing clothes and a jacket similar to those described by Mr. Flores and Gomez matched the general description of the age, facial hair, and race provided by Mr. Flores.

The jury could have also reasonably concluded the officers followed the directions witnesses provided of where the witness ran from the scene of the crime. The incident happened at 4:30 a.m. Officer Martinez was dispatched at 4:41 a.m. By the time he arrived, Gomez was located hiding under a vehicle near the scene of the crime. The jury could have further determined Gomez's behavior in refusing to follow any of the officers' commands, as he hid under the vehicle, in the residential neighborhood was some evidence of guilt.

Viewing the evidence in the light most favorable to the verdict, and considering both the circumstantial and direct evidence, we conclude a rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. *See Merritt*, 368 S.W.3d at 525. Accordingly, we overrule Gomez's first issue.

We turn next to Gomez's contention the trial court erred in admitting the State's demonstrative evidence of the gun.

### DEMONSTRATIVE EVIDENCE

During Gomez's testimony, the State offered a photograph, for demonstrative purposes, of a gun purporting to be an accurate representation of the gun used during the robbery. Defense counsel objected.

**A.     Standard of Review**

A trial court's admission of demonstrative evidence is reviewed under an abuse-of-discretion standard. *See Taylor v. State*, 555 S.W.3d 765, 777 (Tex. App.—Amarillo 2018, pet. ref'd), *cert. denied*, 2019 WL 4922144 (Oct. 7, 2019) (citing *Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981)); *see also Onwukwe v. State*, 186 S.W.3d 81, 85 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that trial court did not abuse its discretion in admitting demonstrative evidence); *Orrick v. State*, 36 S.W.3d 622, 625 (Tex. App.—Fort Worth 2000, no pet.) (finding no abuse of discretion in admitting demonstrative evidence at trial); *Baker v. State*,

879 S.W.2d 218, 220 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("The admission of demonstrative evidence rests within the sound discretion of the trial court.").

**B.      Arguments of the Parties**

Gomez contends the photograph of the gun admitted at trial was not the gun used during the offense and had little probative value. Additionally, the trial court did not instruct the jury that the evidence should only be considered as evidence demonstrating what the weapon looked like.

The State argues the photograph of the weapon was identified as a gun "similar to" or resembling the weapon used during the commission of the crime, and it was admissible.

**C.      Demonstrative Evidence**

Demonstrative evidence is evidence admitted for use as a visual aid or to illustrate a point, but it must meet the relevancy and materiality requirements imposed by Rule 403 of the Texas Rules of Evidence. *Baker v. State*, 177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "[T]he proponent must first authenticate [the demonstrative evidence and then] establish that the evidence is fair and accurate and that it helps the witness to demonstrate or illustrate his testimony." *Torres v. State*, 116 S.W.3d 208, 213 (Tex. App.—El Paso 2003, no pet.).

Under Rule 403, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . or needless presentation of cumulative evidence." TEX. R. EVID. 403; *Harris v. State*, 572 S.W.3d 325, 334 (Tex. App.—Austin 2019, no pet.).

A Rule 403 balancing test includes the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Importantly, the rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

**D.      Before the Trial Court**

The State offered a picture that purported to be an accurate representation of the gun Mr. Flores saw during the robbery—"generally what the gun looked like." On cross-examination, defense counsel questioned Mr. Flores on whether he knew what type of gun was used or the manufacturer, "like which type of revolver it was."

Mr. Flores responded, "To me, I'm assuming that, you know, it looked like a —" Defense counsel objected Mr. Flores was assuming and the demonstrative evidence could not accurately represent what he was alleging he saw that evening. Defense counsel objected to the admission of the evidence on relevancy.

On redirect, the State elicited testimony from Mr. Flores that the picture was a fair and accurate representation of what the gun looked like on the morning of the robbery. The trial court admitted the picture for demonstrative purposes only.

**E.      Analysis**

An object, such as a weapon, offered in evidence should not be rejected "solely because it is not positively identified as the exact object that was connected with the crime." *Foster v. State*, 779 S.W.2d 845, 861 (Tex. Crim. App. 1989) (quoting *Binyon v. State*, 545 S.W.2d 448, 452 (Tex. Crim. App. 1976)). "The lack of positive identification of a weapon or instrumentality used during the commission of a crime affects its weight rather than its admissibility." *Fletcher v. State*, 902 S.W.2d 165, 166–67 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). "The introduction of a

weapon submitted as 'the same as,' 'like,' or 'comparable to' is admissible as demonstrative evidence to aid the jury in understanding oral testimony adduced at trial." *Id*. at 167.

The State originally asked Mr. Flores if the features of the gun were similar to the gun used during the offense. Defense counsel objected because Mr. Flores was "assuming" and the demonstrative evidence could not accurately represent what he allegedly saw during the crime. On redirect, Mr. Flores testified the picture was a fair and accurate representation of what the gun looked like on the morning of the robbery.

Even though the picture of the gun used at trial was not identified as the gun used during the offense, Mr. Flores testified the photograph fairly and accurately depicted the gun he saw that day. Additionally, prior to offering the picture, Mr. Flores provided a description of the gun and testified with ease and some degree of comfort regarding the differences in guns and the names of the different parts on the gun. Based on the entire record, we cannot conclude that the trial court abused its discretion in admitting the picture of gun into evidence for demonstrative purposes. *See* TEX. R. EVID. 403; *Simmons*, 622 S.W.2d at 113; *Fletcher*, 902 S.W.2d at 166-67.[1] Accordingly, we overrule Gomez's second issue on appeal.

### CONCLUSION

Having overruled both of Gomez's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do not publish

---

[1] Gomez argues the trial court's error in admitting the evidence was compounded by its failure to give an instruction for the jury to limit the use of the photo. However, Gomez's failure to request an instruction at the time the evidence was admitted constituted waiver of his evidentiary complaint. *See State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.6 (Tex. 1989).