

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-19-00074-CR & 04-19-00075-CR

Humberto **RAMIREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2017CR11793 & 2017CR11790
Honorable Ron Rangel, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: January 15, 2020

AFFIRMED

A jury convicted Humberto Ramirez of two counts of aggravated assault with a deadly weapon. On appeal, Ramirez contends the evidence is legally and factually insufficient to support his conviction. We affirm.

## BACKGROUND

On May 27, 2017, Ramirez attended a family party at which a fight broke out. In connection with the fight, Ramirez was charged with four counts of aggravated assault with a deadly weapon for allegedly stabbing with a knife: Gabriela Ramirez ("Gabriela"), his wife;

Eleazar Rios, Ramirez's father-in-law; David Bonds, Ramirez's son-in-law; and Raymond Deleon, Ramirez's brother-in-law. A jury found Ramirez guilty on two counts for the aggravated assaults of Rios and Bonds and acquitted Ramirez on two counts for the alleged assaults of Gabriela and Deleon. Ramirez was sentenced to a term of two years' confinement and now appeals.

Ramirez contends in a single issue that the evidence is legally and factually insufficient to support his convictions.[1] He argues that the "inconsistent verdicts" "shed light" on the insufficiency of the evidence. According to Ramirez, the jury, in finding Ramirez guilty on two counts and acquitting him on two other counts, must have believed either: (1) Ramirez did not use a deadly weapon, or (2) he acted in self-defense.

### STANDARD OF REVIEW AND APPLICABLE LAW

*Legal Sufficiency*

The standard for reviewing sufficiency of the evidence in a criminal appeal is the *Jackson v. Virginia* legal sufficiency standard. *See Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018); *see also Brooks*, 323 S.W.3d at 895 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard, we examine the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. We consider only whether or not the fact finder reached a rational conclusion. *See Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (noting that the appellate court's role "is restricted to

---

[1] The Texas Court of Criminal Appeals has held that there is no meaningful distinction between a legal sufficiency standard and a factual sufficiency standard and the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.); *see also Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). Therefore, we review Ramirez's legal and factual sufficiency arguments together.

guarding against the rare occurrence when a fact finder does not act rationally") (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)).

The legal sufficiency standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence." *Adames v. State*, 353 S.W.3d 854, 861 (Tex. Crim. App. 2011). We may not reweigh the evidence or substitute our judgment for that of the jury. *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)). We also must give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Any inconsistencies in the evidence must be resolved in favor of the jury's verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

*Aggravated Assault with a Deadly Weapon*

In order to convict Ramirez of aggravated assault with a deadly weapon, the State had to prove beyond a reasonable doubt that Ramirez intentionally or knowingly committed an assault and: (1) caused serious bodily injury to another, including the person's spouse; or (2) used or exhibited a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a). A deadly weapon is defined in relevant part as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B). A knife

can be a deadly weapon if the evidence shows that its use or intended use renders it capable of causing death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46).

*Self-Defense*

"A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force . . . ." *Id.* § 9.32(a). Under Section 9.31, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

In considering the justifications of self-defense, the jury is not required to find that a victim was actually using or attempting to use unlawful deadly force against a defendant. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). "A person has a right to defend himself against apparent danger to the same extent as if the danger were real." *Id.* The only requirement is that a defendant reasonably believe he must act immediately, and he can have a reasonable belief that force is immediately necessary even if the objective evidence shows the defendant was never in any real danger. *See id.*

When a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not

justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (en banc). The burden of persuasion does not require the production of evidence, rather it only requires that the State prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.3d at 913. If the jury finds the defendant guilty, it has made an implicit finding against any self-defense theory raised by the defendant. *Id.* at 914; *Zuliani*, 97 S.W.3d at 594. If a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his claim of self-defense, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact . . . would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914; *see Jackson*, 443 U.S. at 318–19.

<u>*Inconsistent Verdicts*</u>

"Inconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency." *Moore v. State*, No. 04-12-00490-CR, 2013 WL 3148650, at *1 (Tex. App.—San Antonio June 19, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Dunn v. United States*, 284 U.S. 390, 393–94 (1932)). "Inconsistent verdicts do not necessarily imply that the jury convicted the defendant on insufficient evidence, but may simply stem from the jury's desire to be lenient or to execute its own brand of executive clemency." *Thomas v. State*, 352 S.W.3d 95, 101 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "Even where an inconsistent verdict might have been the result of compromise or mistake, the verdict should not be upset by appellate speculation or inquiry into such matters." *Jackson v. State*, 3 S.W.3d 58, 61–62 (Tex. App.—Dallas 1999, no pet.) (citing *United States v. Powell*, 469 U.S. 57, 64–67 (1984)).

**DISCUSSION**

Ramirez acknowledges that inconsistent verdicts are not barred by law. *See Dunn*, 284 U.S. at 393–94; *Thomas*, 352 S.W.3d at 101. He argues that the inconsistent verdicts "shed light" on the insufficiency of the evidence as to his convictions for the aggravated assaults with a deadly weapon of Rios and Bonds because the jury could only have reached its verdicts if it determined either: (1) Ramirez did not use a deadly weapon, or (2) Ramirez acted in self-defense. We disagree.

We note first that Ramirez offered more than two theories at trial that could explain the inconsistent verdicts. At closing, defense counsel specifically questioned whether the evidence shows that Ramirez committed an assault against Gabriela. Defense counsel also questioned whether the evidence sufficiently shows that a knife wounded Gabriela and Deleon. Unlike, with Rios and Bonds, no witness testified to seeing Ramirez stab Gabriela or Deleon with a knife and evidence adduced at trial supports inferences that Gabriela's and Deleon's injuries were caused by falls, rather than knife wounds. Thus, because of these alternative theories, the not-guilty verdicts as to Gabriela and Deleon do not necessarily suggest that Ramirez did not use a deadly weapon on Rios and Bonds or that Ramirez acted in self-defense.

In any event, the evidence shows, as to Rios and Bonds, that Ramirez was seen with a pocketknife on the afternoon of the party. Bonds testified that Ramirez used his knife when cutting a string while putting up decorations. A family friend, Leobardo Quezada, testified that he saw Ramirez use his knife to cut the string on a balloon. No witness testified that any other person at the party had a knife. Quezada testified that during an altercation he saw Ramirez stab both Rios and Bonds with a knife. Evidence was adduced that Rios was hospitalized for his wound for three days, and Bonds was hospitalized for approximately a week. Photos of the wounds were admitted into evidence, and a crime scene investigator testified that the wounds to Rios and Bonds were consistent with stab wounds. Viewing the evidence in the light most favorable to the verdict and

deferring to the jury's assessment of credibility, we hold the evidence was legally sufficient for the jury to conclude that Ramirez stabbed Rios and Bonds with his pocketknife during an altercation.[2]

We also determine that the jury could have found against Ramirez on the self-defense issue beyond a reasonable doubt. Several witnesses testified that a verbal dispute between Ramirez and Rios escalated into a physical fight involving Ramirez, Rios, Bonds, Deleon, and several others. Ramirez argues that the evidence shows that his assaultive conduct, if any, was made in self-defense. Ramirez also argues that Deleon placed Ramirez in a chokehold, which Ramirez could have reasonably thought amounted to the use of deadly force against him.

At trial, several eyewitnesses presented accounts of the incident. Quezada testified that, at the party, Ramirez spoke to his wife, Gabriela, in a strong tone of voice. Gabriela's father, Rios, asked Ramirez why he was speaking to Gabriela in that manner, and Ramirez asked in response whether Rios wanted to fight. Rios stood up, and Quezada placed himself between Ramirez and Rios. One of Ramirez's adult daughters and Bonds moved toward the confrontation. According to Quezada, nothing physical had happened up to this point. Deleon then approached Ramirez from behind. Deleon grabbed Ramirez, a struggle ensued, and Ramirez took out his pocketknife. According to Quezada, Ramirez stabbed Bonds and later stabbed Rios.

Gabriela testified that the incident began when Rios approached Ramirez, and the two began arguing. Gabriela, her sisters, and Quezada then stepped between Ramirez and Rios to separate them. According to Gabriela, the incident turned physical when one of her sisters, Ana Deleon ("Ana"), tried to separate Ramirez from Rios. According to Gabriela, Ramirez hit or shoved Ana. Deleon then came forward and tried to grab Ramirez, and Ramirez pushed Deleon.

---

[2] Ramirez does not contest that the pocketknife could constitute a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a); *McCain*, 22 S.W.3d at 503.

In Bond's account, he heard Ramirez yell at Gabriela and saw Ramirez and Rios get into an argument. Bonds then went toward Ramirez and Rios. Bonds testified that Ramirez and Rios were pushing each other, and Ramirez threw a punch. Deleon then went to Ramirez, put a hand on his shoulder, and told Ramirez to calm down. Ramirez pushed Deleon to the floor. Bonds tried to separate Ramirez and Rios. Bonds then felt a "poke" under his left shoulder blade. Bonds reached back, felt blood, and left the altercation.

In her account, Deleon's wife, Ana, testified that Ramirez became upset and Rios asked him, "What's wrong with you?" Ana, Ana's mother, and one of Ana's sisters then tried to get between the men. According to Ana, Ramirez threw the mother and Rios to the floor. Deleon then came over, and Ramirez shoved Deleon.

Rios testified that he did not remember how things got physical between him and Ramirez. Rios stated that no person other than Ana got between him and Ramirez.

Deleon testified that he heard his wife yell and then fall into a crowd. Deleon went toward the fray. According to Deleon, he saw Ramirez coming out and tackled him because Deleon assumed that only Ramirez would cause a problem.

The jury's role was to resolve conflicts in the testimony, and we must presume the jury resolved any conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Here, the jury was free to credit either Gabriela's or Ana's testimony that Ramirez was the first person to escalate the verbal altercation into a physical fight. The jury was also free to credit Bonds's testimony that Deleon placed a hand on Ramirez's shoulder and told Ramirez to calm down. The jury could have rationally disbelieved Quezada's testimony that Deleon grabbed Ramirez, or the jury could have rationally resolved any conflicts in the testimony to determine that Deleon's physical contact with Ramirez did not amount to a chokehold capable of causing serious injury or death. Thus, the jury could have rationally rejected Ramirez's contention that his use of deadly force was justified to

protect himself from the attempted use of unlawful deadly force by anyone else at the party. *See* TEX. PENAL CODE ANN. § 9.32; *see also Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding evidence was sufficient to support the jury's rejection of the defendant's self-defense claim, where the evidence demonstrated that the victim attempted to punch the defendant, who then stabbed the victim with a knife); *Schiffert v. State*, 257 S.W.3d 6, 14 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding no reasonable jury could have found that the defendant was justified in using deadly force against his victim, where the defendant provoked the altercation, and where the victim struck another individual involved in the altercation with his fists).

Viewing the evidence in the light most favorable to the verdicts and deferring to the jury's assessment of credibility, we hold the evidence was legally sufficient to support Ramirez's convictions for the aggravated assaults with a deadly weapon of Rios and Bonds. *See Jackson*, 443 U.S. at 319; *Braughton*, 569 S.W.3d at 608.

### CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBISH